## BARTLETT & WARING v. McRAE.

1. Where several judgments for the same debt are recovered against the surviving partner and the administratrix of the deceased partner, the latter cannot, by paying the amount due, and obtaining an assignment of the judgment against the former, continue the same in force and have execution thereof in the name of the plaintiff, in order to her re imbursement.

WRIT of error to the Circuit Court of Mobile.

This was a motion to quash an execution upon the following state of facts, which appear by bill of exceptions. It was admitted that a judgment was rendered against the defendant in error, as the surviving partner of McRae & Lang, for a partnership debt; that an execution was issued thereon and returned "no property found" as to part. Upon this return, the plaintiffs commenced suit under the statute against Catherine Lang, as the administratrix of the deceased copartner, and re-

covered a judgment against her as such; and, thereupon, she paid the residue remaining unpaid on the judgment of the plaintiffs against the defendant, and took an assignment of the judgment in the following words, " know all men by these presents that we, John Bartlett, jr. and Moses Waring, for and in consideration of the sum of six thousand seven hundred and twenty five (66-100) dollars, lawful money, to us in hand paid by Catherine Lang, administratrix of Willis Lang, deceased, have assigned, transferred and set over and by these presents do assign, transfer and set over unto the said Catharine Lang, administratrix, all our right title and interest in and to two certain judgments recovered by us against Collin C. McRae, surviving partner of McRae & Lang, in the Circuit Court of Mobile county, at the spring term 1838; one of which was for the sum of $7,435 21, recovered on the 21st May, 1838; the other for the sum of $7,442 75, recovered on 1st June, 1838. Upon which said judgments has been paid, by the said C. C. McRae, surviving partner, the sum of $10,383 66, inclusive of costs; leaving the balance due to us above mentioned of $6,-725 66, which includes interest up to the 4th March, 1842. To have and to hold the said judgments to her, the said Catharine's use, so that she may have upon the same all legal remedies secured to us by the said judgments. In witness whereof, we have hereunto set our hands and seals, this 17th of March, 1842."

JOHN BARTLETT, Jr. [seal.]
MOSES WARING, [seal.]

In presence of
    Dudley Hubbard. }

The execution in question was afterwards issued in the name of the plaintiffs, at the instance of Mrs. Lang, and the Court refused to quash it, but ordered satisfaction of the judgment to be entered of record. Waring, one of the plaintiffs in execution, and also the attorneys of Bartlett & Waring appeared and admitted the above facts, and were willing to enter satisfaction. Mrs. Lang objected, but the Court allowed it to be entered. It further appeared that a bill in Chancery was pending at the suit of Mrs. Lang against the defendant in error, for the settlement of the partnership accounts between McRae & Lang;

which bill was filed previous to the suit of the plaintiffs in error against Mrs. Lang.

Dargan, for the plaintiffs in error, insisted, that Bartlett & Waring having assigned their judgment against the defendant to Mrs. Lang, could not prevent her from suing an execution in their name against the defendant in error. That they could give no consent, nor make any admission which would oppose the express terms or legal effect of the assignment; and the judgment of the Court, whether with or without the approbation of the nominal plaintiffs, is erroneous.

. Stewart, for the defendant. The payment of the amount due on the indebtedness of McRae & Lang, whether made on the footing of the judgment against McRae, or Lang's administratrix, is a satisfaction of both judgments. The law is not varied by the paper called an assignment of the judgment against the former—the legal effect of the transaction is to satisfy, and of consequence, destroy the vital energy of that judgment. This result would follow from the fact that the debt was a joint charge upon McRae and his deceased co-partner, though the remedy for its recovery from both sources would be several.

COLLIER, C. J.—It has been frequently said that the death of one partner, terminates the partnership as to future dealings; yet the rights, duties, powers and authorities of the survivors remain, so far as may be necessary to enable them to wind up and settle the firm. One of the consequences of a dissolution thus effected is, that the personal representatives of the deceased become tenants in common with the survivors of the partnership property and effects in possession. As to the choses in action, and other rights of action, *at law* they belong to the survivors, who possess the exclusive right to reduce them into possession; but when recovered, the survivors are regarded as trustees thereof, for the benefit of the partnership; and the representatives of the deceased partner possess in equity the same right of sharing and participating in them, which the deceased partner would have possessed if he had been living. [Story on Part. and citations in the notes, 492-3-4.] So it is laid down,

that independent of any special covenant, or distinct several contract, one partner cannot maintain a suit at law against the other partners, for money paid or advanced, or liabilities incurred on account of the partnership. *First*, because in such a suit all the partners, including himself, must be made defendants. *Second*, because it is impossible to know, until all the partnership concerns are ascertained and adjusted, whether a particular partner be a debtor or a creditor of the firm; for although he may have made large advances on account thereof, he may be indebted to the firm in a much larger amount. If one partner could recover of the other for his advances, they in turn might maintain a cross action, the determination of which would not adjust the respective rights and liabilities of the parties. To prevent litigation so profitless and inconclusive, a Court of Equity will afford the appropriate remedy, wherever *ex æquo et bono* it is necessary and proper; and that tribunal will finally settle the accounts of the partnership and award to each member of the concern the measure of justice to which he is entitled. [Story on Part. 318 to 326; 513 to 515, and citations in notes. Grigsby's Ex'ors. v. Nance, 3 Ala. Rep. 347.

In Marr's Ex'or. v. Southwick, Cannon & Warren, 2 Porter's Rep. 351, it was held, that a creditor of a partnership could not recover in equity against the representatives of one of the partners who was dead, the surviving partner not being shown to be insolvent. Mr. Justice Story says such was the doctrine formerly held on this subject, but continues, "it is now held, that in equity all partnership debts are to be deemed joint and several; and consequently the joint creditors have in all cases a right to proceed at law against the survivors, and an election also to proceed in equity against the estate of the deceased partner, whether the survivors be insolvent, or bankrupt, or not." [Story on Part. 514, and citations in notes.]— After the decision of the case in 2 Porter's Rep., a statute was enacted, which gives an action at law in such case, against the representatives of the deceased partner, subject to the following provisos: "*Provided,* the plaintiff shall, before instituting such suit, make affidavit in writing before the Clerk of the proper Court, or Court itself, to be filed with the papers, that the survivor is insolvent or unable to pay the amount of the debt, or is beyond the jurisdiction of the Court. *Provided, however,*

that when any such representative is sued separately, which may be done without such affidavit, no execution shall issue against such representative, until an execution is *bona fide* run and returned *nulla bona* as to the survivors." [Bartlett & Waring v. Lang's Administratrix, 2 Ala. Rep. N. S. 404.]

We have been thus particular in stating the foregoing principles, as they seem to us to point to a conclusion in the case before us.

Now, although the death of Willis Lang dissolved, *ipso facto,* the partnership between himself and the defendant, as to all future operations, yet we have seen that the dissolution did not exclude his representative from all interest in the assets of the firm. As to those in possession, she was a tenant in common, and as to those in action, she was a *cestui que trust* with the defendant, who was a *trustee,* for their joint benefit. The defendant's liability for the payment of the debts of the firm, was absolute, and at law primary, yet the administratrix' might also be sued at law, under the statute, or in equity, for the recovery of the same right. So that, notwithstanding the death of one of the partners, the debts owing at the occurrence of that event, are a several charge on the administratrix and the survivor. This being the case, the satisfaction of the judgment against either, must be regarded an extinguishment of the right against both. Upon principles of analogy, as well as direct reasoning this must be so.

The payment of the judgment recovered against Mrs. Lang, did not give her a right of action against the defendant, but her remedy, as we have seen in such case, would be in equity, where the Chancellor would adjust the accounts of the parties, and ascertain the balance between them. A satisfaction of that judgment would, we have already said, inure to the discharge of the judgment against the defendant, and leave nothing due which the plaintiff could assign. What would have been the effect if Mrs. Lang had, with her own means, have paid the judgment against her, and taken an assignment to herself, individually, it is unnecessary to consider; in the entire transaction she seems to have represented her intestate's estate.

The consequence is, the judgment of the Circuit Court is affirmed.