This is an appeal from a summary judgment in favor of Paul McMullan in the amount of $226,224.63 against defendants Jay Amin and Robert Pager and against defendant Phillip Hardy for $95,000. The following facts are necessary for a determination of this case.
In 1984, Toll Telephones, Inc. ("TTI"), was incorporated by Phillip Hardy, Joe Ernest, and Ken Jordan.[1] Later that same year, Robert Pager and Paul McMullan became shareholders and TTI began to borrow money to finance its operation. In February 1985, TTI borrowed $70,000 from AmSouth. Another $25,000 loan was made by AmSouth in April, and subsequently AmSouth issued two letters of credit totaling $150,000 on behalf of TTI. The shareholders signed as guarantors on the notes. In early 1987, TTI paid $10,000 on its $70,000 note. However, the two letters of credit were called, and a total of $235,000 remained unpaid.
During this time, TTI was negotiating with investors in New York regarding a possible merger. At the investors' insistence, the shareholders of TTI requested that AmSouth transfer the corporate obligation to the individual shareholders, thereby relieving the corporation of the debt. AmSouth prepared the necessary documents, which were signed by McMullan, Pager, and Amin. Hardy, likewise, signed the documents for the full amount, but he claims that a clause in the documents limits his liability to $95,000.
When the note was not paid in full, AmSouth filed suit on December 28, 1987, against Hardy, Amin, and Pager. McMullan was not made a party defendant because he had previously paid one-fourth of the principal and interest due, thereby reducing the debt owed to $184,315.07 at the time of filing suit ($176,250 unpaid principal + $8,065.07 accrued interest). By its complaint, AmSouth demanded $184,315.07 from Amin and Pager, as well as $95,000 from Hardy. On June 24, 1988, the trial court entered summary judgment in favor of AmSouth for $226,224.63 against Amin and Pager. Subsequently, on July 1, 1988, McMullan satisfied the debt with AmSouth and requested of the court that he be substituted as a party plaintiff. His motion was granted on September 2. Then, on September 7, the trial court entered summary judgment against Phillip Hardy in the amount of $95,000.[2]
First, we note that McMullan was a comaker on a note for $235,000.[3] Therefore, as a co-maker, he was jointly and severally liable for the debt.[4] Following the entry of *Page 516 
summary judgment against Amin and Pager for $226,224.63, McMullan satisfied the debt and requested that he be substituted as a party plaintiff in order that he might enforce the judgment against Amin and Pager. McMullan argues that he took an assignment of the judgment. Thus, he argues that pursuant to § 6-9-196, Code of Alabama 1975, he, as assignee, is entitled to enforce that judgment, with all the rights that AmSouth would have had if it had attempted to enforce the judgment. We disagree.
It is important at the outset to note that McMullan was not a stranger to these transactions. He was not a disinterested party merely taking an assignment of a debt owed to AmSouth. Instead, McMullan was a co-maker on the note. Therefore, when he satisfied the judgment against Amin and Pager, McMullan extinguished AmSouth's right to execute on the judgment. That is, AmSouth no longer could have collected $226,224.63 from Amin and Pager. While McMullan contends that he should be able to "stand in the shoes of AmSouth" and enforce the judgment, he misinterprets the distinction between himself and someone who would be a stranger to the transactions. If McMullan had been a stranger to the transactions, then he could have purchased the note from AmSouth and thereby be entitled to be subrogated to the debt owed by the defendants. However, because this was not the case, McMullan extinguished the debt as to all four of the men to AmSouth by paying the amount due; he is not entitled to enforce a debt that no longer exists.
We note, however, that McMullan is not left without a remedy, i.e., an action for contribution by Amin, Pager, and Hardy to recover a portion of the sum paid by him to AmSouth in satisfaction of the debt.
This case is not dissimilar from Cameron v. Gunter,406 So.2d 964 (Ala.Civ.App. 1981). In that case, a judgment was rendered against two obligors. One of the cojudgment debtors satisfied the judgment and sought an assignment of the judgment in order to enforce contribution. Cameron, supra, at 965. The Court of Civil Appeals stated as follows:
 "Since no applicable Alabama statute grants such subrogation rights, we have extensively searched the case law upon the subject. An irreconcilable split of authority exists among the various jurisdictions upon the question as to whether a cojudgment debtor who pays the judgment is subrogated thereto as against the other cojudgment debtors so as to utilize the judgment to enforce contribution. 73 Am.Jur.2d, Subrogation § 63, p. 637; Anno., 'Right of one cojudgment debtor who pays judgment to be subrogated thereto as against other cojudgment debtors,' 157 A.L.R. 495. In that annotation, only one Alabama case is cited, Hogan v. Reynolds, 21 Ala. 56, 69 (1852).
 "In the Hogan case, supra, it was stated that, 'if a judgment [against two cojudgment debtors] is paid by one who is a principal in that debt, and, as such, is bound to pay, he cannot, by obtaining an assignment of the judgment, keep it alive in order to coerce payment from his coprincipal. . . .' See also 49 C.J.S. Judgments § 555.-b, p. 1026. In a case with similar facts, it was decided that such payment discharges the judgment and leaves nothing due which the judgment plaintiff could assign to a cojudgment debtor defendant. Bartlett Waring v. McRae, 4 Ala. 688 (1843). Where a judgment is rendered against two co-obligors, an obligor who pays the judgment in full may not enforce contribution from a cojudgment debtor by means of an execution issued upon that judgment, for the payment satisfied the judgment. Abercrombie v. Conner, 10 Ala. 293 (1846).
 ". . . . According to the facts before us, Gunter's possible remedy is limited under our present law to a separate civil action against Cameron for contribution. Abercrombie v. Conner, supra."
McMullan argues that the Cameron case significantly differs this our present case because McMullan was not made a party defendant and, therefore, is not a cojudgment debtor. We recognize this distinction, and it is well taken; however, the fact *Page 517 
remains that he was a co-maker on the note, and his payment of the obligation extinguished the debt. Therefore, McMullan's only possible remedy is an action for contribution. SeeCameron, supra, and Abercrombie v. Conner, 10 Ala. 293 (1846).
REVERSED AND REMANDED.
MADDOX and ALMON, JJ., concur.
HORNSBY, C.J., and STEAGALL, J., concur specially.
[1] Joe Ernest and Ken Jordan later sold their shares and are not parties to this appeal.
[2] The total amount borrowed from AmSouth was $245,000. At the time of filing suit, the debt was $184,315.07, with interest accruing on the principal at a rate of $62.01 per day. There is no explanation in the record as to why the award to McMullan totaled $321,224.63 ($226,224.63 + $95,000). While we recognize that mathematical errors were involved in the computation of damages, we do not need to reach this issue, because the judgment is due to be reversed for other reasons.
[3] When the obligation was transferred from the corporation to the shareholders, the notes were consolidated into one note totaling $235,000.
[4] The fact that McMullan paid one-fourth of the debt to AmSouth prior to their filing suit did not extinguish McMullan's joint and several liability on the remaining portion of the note.