This is the second appeal involving the same facts and parties. AmSouth Bank sued Phillip R. Hardy, Jay Amin, and Robert Pager to collect upon a $235,000 note the defendants had executed to the bank in order to finance their company, TTI, Inc. Paul McMullan was also a maker on the note, but he was not sued, because he had previously paid off a portion of the debt in exchange for AmSouth's agreement not to take legal action against him for six months.
AmSouth filed a motion for summary judgment and only Hardy responded to it. Hardy later amended his answer to include a counterclaim alleging fraud and conspiracy against AmSouth and McMullan. The trial court entered a summary judgment for AmSouth on this counterclaim and also entered a summary judgment for AmSouth on its claims against Pager and Amin. McMullan subsequently satisfied the entire debt by executing a new note to AmSouth, with himself as the only maker. He then requested that the court substitute him for AmSouth as the plaintiff in the claim still pending against Hardy, and the court granted this motion. The court subsequently entered a summary judgment in favor of McMullan against Hardy in the amount of $95,000.
Hardy appealed that judgment to this Court in Hardy v.McMullan, 547 So.2d 514 (Ala. 1989). There, we determined that McMullan did not take the place of AmSouth as a creditor merely because he had extinguished the debt. On the contrary, as a co-maker on the note, McMullan was jointly and severally liable for the full amount of the note and was thus required to pay it off upon AmSouth's demand. We therefore reversed the judgment against Hardy and concluded that McMullan could recover the amount only by filing an action for contribution.
In response to our decision, McMullan did file an action for contribution against Hardy, and this claim is the basis of the instant case. Hardy answered the complaint and filed a counterclaim against McMullan and a third-party complaint *Page 1148 
against AmSouth, alleging conspiracy to defraud. The trial court entered a summary judgment for AmSouth and McMullan on Hardy's claims and entered a summary judgment for McMullan in the amount of $95,000 against Hardy. Hardy appeals.
A summary judgment is proper and must be affirmed on appeal if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Lee v. City of Gadsden, 592 So.2d 1036
(Ala. 1992).
Hardy first argues that McMullan is not legally entitled to contribution from him. Hardy claims that McMullan had an oral agreement with the other shareholders in TTI to capitalize the company and to be responsible for any loan to the corporation to finance its operations. He concludes that this oral argument constituted a waiver of McMullan's right to contribution for the debt McMullan paid off and that the summary judgment was therefore improper.
Under Alabama law, joint makers of notes are bound severally and jointly to the payee for the full amount owed; but as to themselves, each is principal to the extent of his share of the joint and several debt and surety to the extent of the shares of the other makers. Ala. Code 1975, § 8-3-1. The maker of a note who satisfies the amount of the debt has the right to seek contribution from his co-obligors. Hardy v.McMullan, 547 So.2d 514. Although the joint makers of a note may agree to waive the right to contribution, such an agreement falls within § 8-9-2(3) of the Statute of Frauds and must therefore be in writing to be enforceable. Wilderv. Clark, 263 Ala. 55, 81 So.2d 273 (1955).
Here, Hardy testified in deposition that the original founders of TTI brought in McMullan and Pager as 20% shareholders, with the understanding that the two men would provide capital for TTI, either from their own resources or from bank loans, and that they would then be responsible for repaying any such loans.[1] This testimony was corroborated by the affidavit of Ken Jordan, one of the original founders of TTI and a co-maker of the AmSouth note.[2] Jordan testified that Pager and McMullan were made "shareholders of the corporation for the purpose of providing the necessary capitalization to operate the business" and that the "shareholders agreed among themselves that McMullan and Pager would be responsible for the loans from the banks." However, the record shows that this alleged agreement was never reduced to writing. We must therefore conclude that while there is an issue of fact as to whether the oral agreement existed, the issue is not material, because the alleged agreement — being unwritten — would violate the Statute of Frauds.
Hardy next argues that the trial court erred in regard to the amount it awarded McMullan. He points out that under §8-3-1, co-makers of a note are liable in equal amounts for their joint debts. Hardy claims that his pro rata share of the TTI debt amounted to only $78,333; however, his calculations are based only upon the amount of the principal debt, which was $235,000 at the time AmSouth demanded payment, and do not contain any element of interest. Section 8-8-8, Ala. Code 1975, requires that all implied contracts for the payment of money bear interest from the date the money should have been paid. Because the action for contribution rests upon an implied contract, McMullan would be entitled to interest on Hardy's contributive share of the debt from July 1, 1988, the date he discharged the entire $235,000 debt to AmSouth. Pursuant to § 8-3-2, McMullan would also be entitled to 6% interest on Hardy's share of the debt; this interest would be computed from July 1, 1988, to February 3, 1992, the date the court entered the summary judgment for McMullan. The interest on Hardy's contributive share of $78,333 totals $16,894.17; thus, Hardy's actual liability on the debt was *Page 1149 
$95,227.17. The trial court properly limited his liability to $95,000, based on the clause in the $235,000 promissory note. We, therefore, find no error in the amount of the judgment entered for McMullan.
Hardy next argues that the trial court erred in entering the summary judgment for AmSouth and McMullan on his counterclaim/third-party claim of conspiracy. In its summary judgment, the trial court noted that this claim was the same cause of action that Hardy had asserted in his prior action against the defendants and therefore concluded that this claim was barred by the doctrine of res judicata.
The elements of res judicata are (1) a final judgment on the merits (2) rendered by a court of competent jurisdiction (3) with substantially the same parties and (4) with the same cause of action presented in both suits. Krutcher v. Wynn,591 So.2d 453 (Ala. 1991). In this case, Hardy's fraud claim is based upon the same fact situation, the same parties, and the same theory of recovery present in the previous action. The trial court entered a summary judgment on the claim in that prior proceeding. Although the court's judgment for McMullan was subsequently reversed on appeal, the issue of fraud was not the basis for the reversal; indeed, the issue of fraud was not raised or briefed before this Court in that appeal. In cases where an appeal is taken with respect to only a particular issue or particular issues, there can be no retrial of other issues previously tried and determined but not appealed from.Ex parte Army Aviation Center Federal Credit Union,477 So.2d 379 (Ala. 1985). We therefore hold that Hardy's counterclaim and third-party complaint are barred by the doctrine of res judicata.
We find no error in the summary judgment for McMullan; accordingly, it is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, KENNEDY and INGRAM, JJ., concur.
[1] Pager has since declared personal bankruptcy and is therefore no longer liable for repayment of the note.
[2] Prior to the default on the AmSouth loan, Jordan sold his shares in TTI and was absolved of liability as a co-maker of the note.