The plaintiff, Harris W. Stewart, Jr., appeals from a judgment based on a directed verdict for the defendants, Richard O. Jones and S.C.B., Inc., in an action on a promissory note and for contribution. This case presents one issue of first impression in Alabama and another question that has not been addressed by this Court since 1910. Accordingly, we granted oral argument to address both issues: 1) whether an action on a promissory note is barred by the statute of limitations when the note contains clauses stating that the note can be extended by the holder without the consent of the other parties and the holder has extended the term of the note several times pursuant to those clauses and the extensions run beyond the time allowed by the statute of limitations if the time ran from the original due date of the note; and 2) whether a guarantor's cause of action for contribution against his co-guarantor arises only when the guarantor is called upon to pay the debt.
Through a complex series of transactions, Harris W. Stewart, Jr., transferred a parcel of real estate to Richard O. Jones. Jones, in turn, transferred the property to S.C.B., Inc., a now dissolved corporation owned by Jones. In order to meet the obligations owed on another parcel of real estate, Jones borrowed $22,000 from the Bank of Moundville.
On March 9, 1981, Jones, in his capacity as president of S.C.B., executed a promissory note to the Bank of Moundville in the amount of $22,000. The note was secured by a mortgage on a parcel of real estate owned by S.C.B. Jones signed the note as president of S.C.B. and as a guarantor in his personal capacity. Stewart signed the note as a co-guarantor. The maturity date of the note was March 9, 1982.
The promissory note contained clauses stating that it could be extended by the holder without notice to the maker or the guarantors. Specifically, the note provided:
 "Each Borrower, endorser, and guarantor hereof jointly and severally guarantees payment hereof and waives demand, presentment, protest and notice of dishonor and consents to any extensions and renewals hereof without notice. . . ."
The guaranty clause provides:
 "The undersigned (if more than one, jointly and severally) hereby unconditionally guarantees the prompt payment of the within Note (and all extensions and renewals thereof) and of all sums stated therein to be payable, when due, at maturity, by acceleration or otherwise, and hereby consents that from time to time, without notice to the undersigned, said Note may be extended or renewed in whole or in part for any period (whether or not longer than the original period of said Note), additional credit separate from this Transaction may be extended to original Obligor by the Holder, and Holder of said Note may at any time surrender, release, renew, extend or exchange all or any part of the property securing said Note, or take any of the actions set forth in said Note, all without affecting the liability of the undersigned. . . . Each of the undersigned hereby waives presentment, demand of payment and notice of non-payment and of protest and any and all other notices and demands whatsoever."
When the note came due, Stewart made payments on the accrued interest. The bank granted an extension of the note on March 26, 1982, and 10 other times until 1987. During each of these alleged extension periods, Stewart paid part of the interest on the note. On March 23, 1987, after the bank made demand on him, Stewart paid the principal amount of the note, as well as all accrued interest, and the bank executed a written assignment of the note to Stewart.
On April 27, 1988, Stewart made demand on Jones to pay the principal and interest that Stewart had paid in satisfaction of the debt. Stewart filed this action on March 20, 1989, against Jones and S.C.B., seeking reimbursement and indemnity from S.C.B., alleging that he had paid the principal and interest on the note upon S.C.B.'s default. Stewart is also seeking contribution from Jones, contending that as a co-guarantor, *Page 1026 
he is entitled to be compensated by the other guarantor for the amount beyond his share that he paid in satisfaction of the note. At the close of Stewart's case, the trial court directed a verdict in favor of Jones and S.C.B., holding that because the original maturity date of the promissory note was March 9, 1982, and this action was not filed until March 20, 1989, this action was barred by the six-year statute of limitations set out in Ala. Code 1975, § 6-2-34. The trial court denied Stewart's motion for new trial.
The standard of review applicable to a directed verdict is whether the non-moving party has presented substantial evidence in support of his position. If he has not, then a directed verdict is proper. Bailey v. Avera, 560 So.2d 1038, 1039
(Ala. 1990). Moreover, whether to direct a verdict is not a matter within the discretion of the trial court; on review, no presumption of correctness attaches to such a ruling. McCord v.McCord, 575 So.2d 1056, 1057 (Ala. 1991); Barksdale v. St. ClairCounty Comm'n, 540 So.2d 1389 (Ala. 1989).
Our function on review of a directed verdict is to review the entire evidence, and all reasonable inferences that a jury might have drawn therefrom, in the light most favorable to the nonmoving party, Thomaston v. Thomaston, 468 So.2d 116, 119
(Ala. 1985), and if we conclude that a jury could have drawn reasonable inferences supporting the nonmoving party's claim, then we must reverse the judgment based on the directed verdict. Zaharavich v. Clingerman, 529 So.2d 978, 980
(Ala. 1988). To satisfy the "substantial evidence test," the nonmoving party is required to present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Fla., 547 So.2d 870, 871 (Ala. 1989); Rowden v. Tomlinson,538 So.2d 15, 19 (Ala. 1988).
 I.
Stewart's first claim is that as a guarantor of the note he is entitled to be subrogated to the bank and to enforce the note against the maker, S.C.B. Section 7-3-415(5), Ala. Code 1975, provides that "[a]n accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party." Section 7-3-416(4) further states that "words [of guaranty] added to the signature of one of two or more makers or acceptors create a presumption that the signature is for the accommodation of the others."
Citing Hardy v. McMullan, 547 So.2d 514 (Ala. 1989), Jones contends that as a co-guarantor who was jointly and severally liable on the debt with Jones, Stewart is not entitled to be subrogated to the debt owed to the bank. In Hardy, the creditor obtained a judgment against three of four co-makers on a note. The fourth co-maker, McMullan, satisfied the judgment and took an assignment of it to enforce it against the other makers pursuant to § 6-9-196. Hardy, 547 So.2d at 515. We held that when McMullan satisfied the judgment, he extinguished the debt owed the creditor by the makers and that he was not entitled to enforce a debt that no longer existed. Hardy, 547 So.2d at 516. Each of the cases cited by this Court in Hardy dealt with the assignment of a judgment on a debt from the creditor to one of the co-debtors. See, Cameron v. Gunter, 406 So.2d 964
(Ala.Civ.App. 1981); Hogan v. Reynolds, 21 Ala. 56 (1852); Bartlett Waring v. McRae, 4 Ala. 688 (1843); and Abercrombie v.Conner, 10 Ala. 293 (1846).
In this case, however, Stewart is not trying to take an assignment of a judgment obtained by the bank against Jones or S.C.B. In fact, the bank never obtained a judgment against any of the parties. Rather, Stewart is proceeding as the bank's subrogee under § 7-3-415(5). Hardy v. McMullan and the cases cited therein are distinguished from the present case and are, therefore, not controlling.
Contrary to Jones's argument, the note was not, as a matter of law, extinguished upon Stewart's taking an assignment *Page 1027 
of it. Official comment 5 to § 7-3-415 states:
 "Subsection (5) is intended to change the result of such decisions as Quimby v. Varnum, 190 Mass. 211, 76 N.E. 671 (1906), which held that an accommodation indorser who paid the instrument could not maintain an action on it against the accommodated party since he had no 'former rights' to which he was remitted. Under ordinary principles of suretyship the accommodation party who pays is subrogated to the rights of the holder paid, and should have his recourse on the instrument."
Upon paying the debt owed the bank, Stewart became subrogated to the bank's claim against S.C.B. on the note, and he is entitled to proceed on the note against S.C.B.
As the bank's subrogee, Stewart is subject to the statute of limitations just as the bank would have been had it proceeded directly against S.C.B. However, for the reasons set out below, we conclude that the trial court erred in holding that Stewart's claim against S.C.B. is barred by the statute of limitations.
A cause of action against a maker on a time instrument accrues upon maturity. § 7-3-122. A properly executed extension of the note would, in effect, extend the maturity date and thus postpone the accrual of a cause of action on the note. That is, assuming that the bank executed an extension with the contemporaneous consent of all of the parties, it would not be able to bring a cause of action on the note during that period of extension. The extension of a promissory note is like the holder's promise that it will not sue on the note during the course of the extension.
Jones and S.C.B. argue that § 6-2-16 forecloses Stewart's assertion that the extensions of the note postpone the running of the statutory period of limitations. In support of this contention, they cite Defco, Inc. v. Decatur Cylinder, Inc.,595 So.2d 1329 (Ala. 1992), and McLean v. First Nat'l Bank ofMontgomery, 221 Ala. 103, 127 So. 550 (1930).
Section 6-2-16 provides:
 "No act, promise or acknowledgement is sufficient to remove the bar to an action created by the provisions of this chapter, . . . except a partial payment, made upon the contract by the party sought to be charged before the bar is complete or an unconditional promise in writing signed by the party to be charged thereby."
In Defco, Decatur Cylinder claimed that Defco's action on an open account or on an account stated was barred by the statute of limitations. In response, Defco argued that Decatur Cylinder's president had repeatedly promised to pay the money owed. We held that under § 6-2-16, the oral promise to pay by Decatur Cylinder's president was not sufficient to toll the running of the statutory period of limitations. Defco, 595 So.2d at 1332.
That case is distinguished from this case, however, because this case does not involve an oral reaffirmation of S.C.B.'s obligation to pay the bank. The effect of § 6-2-16 is to provide one means of removing the bar of the statute of limitations either after it is in place or while the limitations period is running. We hold that a valid extension of a promissory note postpones the beginning of the limitations period.
McLean presents a situation factually similar to that of the present case. In McLean the promissory note in question contained a clause allowing the holder of the note to extend the note without notice to the maker or indorser.221 Ala. at 105, 127 So. at 552. We held that such a clause did not permit the maker and holder to extend the promissory note and bind the indorser beyond the limitations period. Id.
We first note that McLean was decided by this Court in 1930 — well before the enactment of the Uniform Commercial Code (U.C.C.). For the reasons set out below, the U.C.C. provisions dealing with promissory notes lead us to a conclusion different from that reached by this Court prior to Alabama's adoption of those provisions.
Sections 7-3-109(1)(d) and 7-3-118(f) clearly contemplate notes containing exante consent to an extension at the discretion of the holder. Section 7-3-109(1)(d) *Page 1028 
expressly states that an instrument is payable "at a definite time if . . . it is payable . . . at a definite timesubject to extension at the option of the holder." (Emphasis added.) Section 7-3-118(f) addresses the effect of "a consentto extension, expressed in [the body of] the instrument."
(Emphasis added.) Moreover, the stated purposes of the U.C.C. are to "simplify, clarify and modernize the law governing commercial transactions," § 7-1-102(2)(a), and to "permit the continued expansion of commercial practices through custom, usage and agreement of the parties," § 7-1-102(2)(b) (emphasis added). See, Skelton v. Druid City Hospital Board,459 So.2d 818 (Ala. 1984). Accordingly, we hold that the extension clauses in the promissory note and the guaranty in this case authorize the bank to extend the term of the promissory note at least once and that such an extension postpones the commencement of the limitations period.
Jones and S.C.B. argue that even if the clauses in question authorized the bank to extend the term of the promissory note, the clauses authorize only one extension and that for no longer than the original term of the note. Section 7-3-118(f) provides:
 "Unless otherwise specified consent to extension authorizes a single extension for not longer than the original period. A consent to extension, expressed in the instrument, is binding on secondary parties and accommodation makers. A holder may not exercise his option to extend an instrument over the objection of a maker or acceptor or other party who in accordance with section 7-3-604 tenders full payment when the instrument is due."
(Emphasis added.) The official comment to this section states that its purpose is to make clear that the holder's exercise of previous consent to extension by, for example, the maker, does not invoke § 7-3-606 to discharge secondary parties. § 7-3-118, comment 5. The section also provides a default rule for the construction of a consent to extension found in the body of an instrument. That is, unless the instrument itself provides otherwise, the holder is authorized to extend the note only once. We conclude, however, that this limitation does not apply in the present case because both the promissory note itself and the guaranty "otherwise [specify]".
The consent to extensions in the promissory note (set out in full, supra) authorizes "any extensions and renewals." Because the clause includes the indefinite term "any" and the plural forms "extensions" and "renewals," we are compelled to conclude that it specifies a departure from the default rule and authorizes multiple extensions without notice.
The intent to depart from the default rule is even more evident in the consent clause in the guaranty (set out in full,supra). That provision authorizes the holder to extend or renew the note "from time to time." It is obvious that that phrase contemplates the possibility of more than one extension or renewal. Moreover, the clause specifically states that the note "may be extended or renewed in whole or in part for any period (whether or not longer than the original period of said Note)."
In his order denying Stewart's motion for a new trial, the trial judge stated that the interpretation of the note proposed by Stewart
 "would permit a lender on any note to entirely abrogate the statute of limitations against a maker by successive unilateral 'extensions or renewals' of a note without participation or agreement of a principal to the note. Such an interpretation of the 'consent' provisions of the note defeats the purpose and object of the applicable statutes. . . ." (Emphasis in original.)
We disagree with the trial court's reasoning and conclusion.
In the first place, given the conclusion we reach today, the lender's power to extend or renew the note is not without limitations. The lender will remain bound by the obligation of good faith imposed by § 7-1-203. That obligation cannot be bargained away by the parties. § 7-1-102(3). Moreover, the holder of a note cannot exercise his option to extend the note over the *Page 1029 
objection of a party who makes due tender, as defined in §7-3-604. § 7-3-118(f).
Any extensions or renewals pursuant to consent provisions such as those involved in the present case are not purely "unilateral" acts done without the "participation or agreement" of the parties. Rather, the extensions granted by the bank in this case were done pursuant to the agreement of all of the parties to the note. The fact that the agreement was entered into at the making of the note rather than at the time of the extensions does not defeat the existence or the validity of the agreement.
Finally, the conclusion we reach today furthers, rather than defeats, the purpose of the applicable statutes. One of the important purposes of the U.C.C. is to facilitate more flexibility in commercial transactions. That goal is accomplished in part by providing certain default rules that may be varied by agreement of the parties. To conclude other than we do today would tie the hands of both lenders and borrowers.
In executing the note and its guaranty, Jones and S.C.B. authorized the bank to extend or renew the note from time to time without the consent of the maker or either of the guarantors. We hold that the limitations period for an action on the promissory note did not begin to run until the end of the final period of extension granted by the Bank of Moundville. That is, the bank's cause of action on the note did not accrue until March 1987. As the bank's subrogee, Stewart could bring an action on the note at any time within six years of the accrual of the bank's cause of action. Accordingly, we conclude that the trial court erred in granting a directed verdict in favor of S.C.B. and Jones on Stewart's action on the promissory note.
 II.
Stewart also sued Jones in his capacity as a guarantor of the note. As between Stewart and Jones as guarantors of the note, Stewart is a surety for the payment of Jones's principal obligation. In Smith v. Pitts, 167 Ala. 461, 464, 52 So. 402,403 (1910), this Court held:
 "Since the surety's cause of action, against his principal, comes into existence only upon the payment by the surety of the original obligation, he cannot prevail if his suit be commenced before requisite payment. [Citations omitted.]
. . . .
 "Since the surety's cause of action, in such cases, does not accrue until he has paid the debt of his principal, neither the statute of limitations nor adverse possession will begin to run until such payment. [Citations omitted.]"
See also, United States v. Baker, 681 F. Supp. 750, 751
(N.D.Ala. 1987).
We conclude, then, that Stewart's cause of action for contribution against Jones did not accrue, with regard to the principal of the note, until Stewart actually paid the amount due on the note. However, with regard to the periodic payments of interest made by Stewart, the limitations period began to run at the time each of those payments was made.
 CONCLUSION
For the reasons set out above, the judgment of the trial court is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.