L. CHARLES WRIGHT, Retired Appellate Judge.
This is an appeal from a directed verdict in favor of Liberty National Fire Insurance Company (Liberty National) on a complaint alleging a bad faith refusal to pay an insurance claim. This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.
In March 1992, Paul Turner filed a complaint against Liberty National, alleging a breach of contract and a bad faith refusal to pay an insurance claim. A jmy trial ensued. Liberty National’s motion for a directed verdict was granted as to the bad faith claim. The jury ultimately awarded Turner $30,000 on the breach of contract claim.
Turner’s sole issue on appeal is whether the trial court erred in granting the motion for a directed verdict in favor of Liberty National on his claim alleging a bad faith refusal to pay an insurance claim.
A motion for a directed verdict tests the sufficiency of the opponent’s evidence. Berryhill v. Barnett, 590 So.2d 343 (Ala.Civ.App.1991). If there is any conflict in the evidence to be resolved by the jury, then the motion should not be granted. Berryhill. A motion for a directed verdict should be granted where there is a complete absence of proof on an issue germane to the claim or where there are no disputed questions of fact on which reasonable people could differ. Berryhill. When it considers a motion for a directed verdict, the trial court must let a question go to the jury if there is substantial evidence to support the theory of the complaint. Berryhill.
*591 To prove a bad faith claim against an insurer, a plaintiff must go beyond merely showing nonpayment. National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179 (Ala.1982). The plaintiff must show that the insurance company had no legal or factual defense to the insurance claim. Bowen. Further, “if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.” National Savings Life Insurance Co. v. Dutton, 419 So.2d 1357 (Ala.1982).
In 1988 Turner applied to Liberty National for a dwelling and contents policy for an occupied structure two years of age. Liberty National issued the policy for $20,000 dwelling coverage and $10,000 contents coverage.
The policy contained the following pertinent provisions regarding claims:
“Notify us as soon as possible, telling us as much as you can about the loss. If you do not tell us about the loss within 61 days after it occurs unless reasonably prevented from doing so, your claim will not be accepted.
“Show the damaged property to us as often as we may reasonably require.
“Answer our questions under oath about the loss at our request.
“Within 60 days after the loss, give us a signed, sworn proof of loss. This statement is to include the following information:
“1. The date, time and cause of the loss;
“2. The interest you and others have in the property, including any encumbrances;
“3. Other insurance that may cover the loss;
“4. Changes in title, use or insurable interest of the property during the policy period;
“5. A detailed list of damaged personal property, showing the quantity, cost, place of purchase, actual cash value and amount of the loss. Attach any bills, receipts or other proof of ownership and value;
“6. Specifications of any damaged building and detailed estimates for repair of the damage.”
In March 1990, Liberty National received notice that Turner had sustained a total fire loss on the structure. An adjuster and a cause and origin expert were hired to investigate the claim. The cause and origin expert reported the fire as extremely suspicious. The fire was ultimately classified as “cause of ignition unknown.”
The record reflects that Turner was not cooperative with the investigation. He refused to answer questions concerning his income, answering by saying it was “none of your business.” He refused to tell the adjuster how he paid for the building. He refused to tell the adjuster where he purchased construction materials. He refused to read a letter sent to him by Liberty National regarding his cooperation and his proof of loss and requesting verification of certain contents on his list. He never returned any verification of the questioned contents despite promises that he would. He would not allow Liberty National to obtain a sworn statement from his wife. He stated that he did not want her to know his business. He refused to answer under oath where he banked. He refused, or ignored, seven separate requests to sign a financial information release form.
The record additionally reveals that there were several intentional concealments or misrepresentations made by Turner. Turner consistently claimed that the fire occurred on March 20,1990. In fact, the fire occurred on March 13, 1990. Turner concealed that he owned another home 15 miles away from the insured structure. He did this despite knowledge that such ownership might jeopardize coverage if he did not live at the insured structure. He told Liberty National that he had no other insurance on any structures. The record reflects that he paid insurance on his other home. Turner stated that he owed money to only one bank. The evidence established that he owed six other banks or credit institutions. He concealed the actual cash value of the insured structure and its contents by claiming the amount it *592 cost to purchase or acquire the same without regard to depreciation.
In United Insurance Co. of America v. Cope, 630 So.2d 407 (Ala.1993), our supreme court stated, “the obligation to pay or to evaluate the validity of the claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims.” Here, Turner’s failure to cooperate with the investigation and to provide Liberty National with information required under the contract provided Liberty National with a legal and/or factual defense to the claim of bad faith.
The judgment of the trial court in directing a verdict in favor of Liberty National on the bad faith claim is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN and MONROE, JJ., concur.