[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1252 
The Army Aviation Center Federal Credit Union (credit union) appeals from a judgment based on a jury verdict in favor of Julia T. Johnson. This case is before this court pursuant to Ala. Code 1975, § 12-2-7(6).
Our review of the record reveals the following pertinent facts: In October 1992 Johnson, a 72-year-old woman, deposited approximately $35,000 into a money market account at the credit union to financially assist her 83-year-old sister, Mary Alice Grubbs, who lived in a nursing home in Alabama. Johnson acquired the money from another sister, who had sold Grubbs's house after Grubbs moved into the nursing home.
Since Johnson lived in Florida, she listed her nephew on the money market account, because he lived in Alabama and she felt it would be more convenient for him to write the monthly checks for the nursing home expenses. Johnson discussed at length with her nephew that his name was on the account only to write checks for Grubbs and that he would have no other access to the account.
When Johnson initially opened the account, she requested that all statements and correspondence be mailed to her at her Florida address. A credit union employee apparently assured Johnson that this would not be a problem, and the employee placed an attention message to that effect on the account.
In January 1994 the nephew improperly withdrew $2,500 from the account for his personal use, which upset Johnson. According to Johnson, when the nephew did not repay all the money, she went to the credit union and personally talked to Scott Smith, an employee, about how she could restrict the nephew from accessing the money.
Johnson and Smith apparently discussed placing the money in certificates of deposit (CDs). Johnson testified that she wanted to place the CDs solely in her name, but that Smith informed her that the nephew's name would have to remain on the account. Johnson further testified that Smith assured her that the nephew could not touch the money as long as Johnson physically held the original CDs. Johnson placed the majority of the money in CDs.
In July 1995 Johnson's health began to deteriorate, and she underwent several surgeries, rendering her unable to manage her financial affairs. In February 1996 Johnson resumed control over her financial affairs and discovered that she had not received any recent correspondence from the credit union. Johnson immediately contacted the credit union, which informed her that the nephew had changed the address on the account and that he had withdrawn approximately $27,000.
On April 23, 1996, Johnson filed a multi-count complaint against the credit union, alleging misrepresentation, deceit, suppression, negligence, wantonness, conversion, detinue, and conspiracy. We would note that Johnson also named her nephew in the complaint, but that he is not a party to this appeal.
The case proceeded to trial in January 1997. At trial, the credit union moved for a directed verdict on all claims. The trial court entered a directed verdict in favor of the credit union on Johnson's claims of conspiracy, *Page 1253 
detinue, and conversion. The remaining claims were submitted to the jury, which returned a general verdict in favor of Johnson and assessed her damages at $15,500. The trial court entered a judgment based on that verdict.
Thereafter, the credit union filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, and for a remittitur of the damages. The motion was deemed denied by operation of law. Rule 59.1, Ala. R. Civ. P.
The credit union appeals, contending that the trial court erred in denying its motion for a directed verdict on Johnson's claims of misrepresentation, suppression, deceit, negligence, and wantonness.
 Standard of Review
A motion for a directed verdict tests the sufficiency of the evidence presented by the nonmoving party. Turner v. LibertyNat'l Fire Ins. Co., 681 So.2d 589 (Ala.Civ.App. 1996). When the trial court considers a motion for a directed verdict, it "must let a question go to the jury if there is substantial evidence to support the theory of the complaint." Turner, 681 So.2d at 590. Thus, Johnson, the nonmoving party, must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). "If there is any conflict in the evidence to be resolved by the jury, then [a] motion [for a directed verdict] should not be granted." Turner, 681 So.2d at 590. Additionally, we note that in determining whether a trial court's ruling on a motion for a directed verdict was proper, the reviewing court must view the entire evidence in a light most favorable to Johnson, the nonmoving party. Stewart v. Jones, 614 So.2d 1023 (Ala. 1993).
 Misrepresentation/Deceit
In Goggans v. Realty Sales Mortgage, 675 So.2d 441, 443
(Ala.Civ.App. 1996), this court stated the following regarding legal fraud:
 "Section 6-5-101, Code 1975, defines fraud by misrepresentation of a material fact in the following manner:
 " 'Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.'
 "An innocent misrepresentation is as much a legal fraud as an intended misrepresentation. The good faith of a party in making what proves to be a material misrepresentation is immaterial as to whether there was an actionable fraud. Smith v. Reynolds Metals Co., 497 So.2d 93 (Ala. 1986). Under the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud. Mid-State Homes, Inc. v. Startley, 366 So.2d 734
(Ala.Civ.App. 1979).
 "In order for [Johnson] to recover damages for an innocent misrepresentation, [she] must prove: (1) that there was a false representation; (2) that it concerned a material fact; (3) that it was relied upon by [her]; and (4) that [she was] damaged as a proximate result of the reliance."
Section 6-5-103, Ala. Code 1975, provides for a right of action in deceit:
 "Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood."
Suffice it to say, the record is replete with evidence to support a jury verdict on Johnson's claims of legal fraud and deceit. Johnson testified that she specifically requested that the credit union mail all the monthly *Page 1254 
statements and account correspondence to her at her Florida address and that a credit union employee assured her that such would not be a problem. It is undisputed that an attention message to that effect was placed on the account and, in essence, stated not to change the address unless requested in writing by Johnson. From October 1992 until August 1995, the credit union mailed all correspondence to Johnson. Johnson's nephew, however, eventually changed the address, and the credit union never notified Johnson.
The executive vice president of the credit union testified that in the context of a joint account, it would be a misrepresentation for a credit union employee to promise Johnson that the credit union would send information regarding the account only to Johnson. The executive vice president also implied that the credit union should have notified Johnson of the address change.
Johnson further testified that she went to the credit union alone to inquire as to how she could restrict the nephew from accessing the money. Smith and Johnson apparently discussed placing the money in CDs. Johnson testified that she wanted to place the CDs solely in her name, but that Smith informed her that the nephew's name would have to remain on the account. According to Johnson, Smith assured her that the nephew could not access the CDs as long as Johnson physically held the original certificates. The nephew, however, was able to redeem the CDs by rolling them into the money market account and withdrawing the funds. Furthermore, Johnson testified that the only reason she purchased the CDs was to protect the money. Johnson stated that this was especially true since the money market was paying a higher rate of interest.
A credit union employee informed Johnson that the nephew was able to redeem the CDs because he had reported them as lost. The nephew, however, testified that he did not report the CDs as lost. Instead, he testified that the only thing he told the credit union was that he did not have the CDs. Further, the credit union apparently did not require the nephew to sign an indemnity agreement, nor did it notify Johnson that the nephew intended to redeem the CDs.
The executive vice president testified that if Smith had told Johnson that the nephew's name had to be listed on the CDs, and that the money was safe as long as Johnson held the original CDs, then such statements would be misrepresentations. The executive vice president testified that all employees were trained as to how to handle these situations and that Smith should have informed Johnson that she could have opened a separate account solely in her name and placed the money into that account, which would have prevented the nephew from accessing the money.
It is also interesting to note that Smith testified at trial and that his version of the story was quite conflicting. For example, Smith was very adamant that both Johnson and the nephew came to the credit union and that Johnson was insistent upon purchasing a CD and listing the nephew's name on the CD. Smith testified that he questioned Johnson at least three times regarding whether she really wanted to list the nephew on the CD. Smith testified that he knew the nephew, and he implied that the nephew was not trustworthy. There was evidence presented that the nephew and Smith went to high school together and that the nephew once worked for Smith. Smith also testified that he informed Johnson that if the nephew's name was listed on the account, the nephew would have free access to the account. The nephew, however, testified that he did not accompany Johnson to the credit union and that he initially had no knowledge that Johnson had purchased the CDs.
Based on the conflicting evidence, we find that the trial court did not err in allowing the jury to resolve the evidence.Turner, supra. And, based on the jury verdict in favor of Johnson, we can assume that the jury obviously disbelieved some, or all, of Smith's testimony.
 Suppression
In Gewin v. TCF Asset Management Corp., 668 So.2d 523, 528
(Ala. 1995), our supreme court stated the following regarding a claim of suppression:
 "The legislature has provided: 'Suppression of a material fact which the party is *Page 1255 
under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances.' Ala. Code 1975, § 6-5-102. We have held that the elements of a claim for fraudulent suppression are: '(1) the suppression of a material fact (2) that the defendant was under a duty to communicate (3) because of the confidential relationship of the parties or the circumstances of the case and (4) which caused injury as a proximate consequence.' Applin v. Consumers Life Ins. Co., 623 So.2d 1094
(Ala. 1993), overruled on other grounds, Boswell v. Liberty Nat. Life Ins. Co., 643 So.2d 580
(Ala. 1994). Thus, mere silence as to a material fact is not fraud unless the defendant has a duty to disclose it."
On appeal, the credit union contends that Johnson failed to show that it had a duty to disclose certain information. InBank of Red Bay v. King, 482 So.2d 274, 285 (Ala. 1985), our supreme court stated the following:
 "While the relationship between a bank and its customer has been traditionally viewed by courts as a creditor-debtor relationship which does not impose a fiduciary duty to disclosure on the bank, a fiduciary duty may, nevertheless arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances."
Clearly, the jury could have inferred from the testimony that the credit union had a duty to disclose to Johnson the proper method by which she could better protect her money, i.e., by simply opening a separate account solely in her name and transferring the money into that account. Since the jury returned a verdict in favor of Johnson, we can assume that it determined the existence of such a duty. Thus, the trial court did not err in denying the credit union's motion for a directed verdict on Johnson's suppression claim.
 Negligence/Wantonness
After reviewing the record, we conclude that there was sufficient evidence from which a jury could have inferred negligence and wantonness. The elements of negligence include "(1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." Albert v. Hsu, 602 So.2d 895, 897 (Ala. 1992). As noted previously, we determined that the jury apparently found that the credit union had a duty to disclose certain information to Johnson.
Thus, based on the testimony presented, the jury could have inferred that the credit union was negligent (1) in changing the address on the statements without first notifying Johnson, as it apparently represented that it would; (2) in representing that the nephew's name had to remain on the account, when, in fact, it did not; (3) in failing to disclose that Johnson could have opened a separate account solely in her name; (4) in representing that the nephew could not redeem the CDs as long as Johnson held the originals; (5) in allowing the nephew to redeem the CDs without first notifying Johnson; and (6) in allowing the nephew to redeem the CDs without requiring him to sign an indemnity letter.
Regarding wantonness, our supreme court, in McDougle v.Shaddrix, 534 So.2d 228, 231 (Ala. 1988), stated the following:
 "Wantonness should be submitted to the jury unless there is a total lack of evidence from which the jury could reasonably infer wantonness. 'Wantonness' is defined by the Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."
(Citations omitted.)
As noted previously, we established that the jury apparently determined that Smith had a duty to inform Johnson of the method that she could have utilized in order to restrict the nephew from accessing the money. When viewed in a light most favorable to Johnson, it would appear that Smith deliberately did not disclose such information. And, as previously noted, Smith's testimony was very conflicting.
Thus, the jury could have simply disbelieved Smith's testimony and could have inferred that while Smith had knowledge of the *Page 1256 
nephew's unlikely trustworthiness, he, nevertheless, consciously failed to inform Johnson as to how she could better protect the money. In other words, the jury could have inferred that Smith consciously suppressed the fact that Johnson could have opened another account solely in her name, which would have prevented the nephew from accessing the money. Thus, there was sufficient evidence from which a jury could have inferred that Smith's conduct was wanton.
We would also note that a presumption of correctness attaches to a jury verdict and that such presumption is strengthened by the denial of a motion for a new trial. Brannon v. Webster,562 So.2d 1337 (Ala.Civ.App. 1990).
In light of the foregoing, the judgment based on the jury verdict is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.