Huntsville Golf Development, Inc. ("Huntsville Golf"), a condominium development corporation, sued Marion Ratcliff and a corporation he controlled, Ratcliff, Inc., also a condominium development corporation (hereinafter together called "Ratcliff"), alleging that Ratcliff had converted certain architectural plans for a group of condominiums near the Huntsville municipal golf course. The trial court entered a summary judgment in favor of Ratcliff; Huntsville Golf appealed.
On a motion for summary judgment, the burden is initially on the movant to make a prima facie showing that there is no genuine issue of material fact (i.e., that there is no dispute as to any material fact), and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.;McClendon v. Mountain Top Indoor Flea Market, Inc.,601 So.2d 957 (Ala. 1992); Elgin v. Alfa Corp., 598 So.2d 807 (Ala. 1992). "The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact." McClendon, at 958; Elgin, at 810-11.
Rule 56 must be read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). On review of a summary judgment, this Court reviews the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. FlemingFoods of Alabama, Inc., 613 So.2d 359 (Ala. 1993).
In 1990, Huntsville Golf began to develop a group of condominiums, known as Fairway Hills, near the Huntsville municipal golf course. During the early stages of development, Huntsville Golf commissioned an architect to prepare architectural plans specifically for the Fairway Hills development. Huntsville Golf received a loan from SouthTrust Bank to finance the condominium construction. Pursuant to the loan agreement, the president of Huntsville Golf, Nelson Chatelain, executed a document styled "Assignment of Borrower's Interest in Contract Documents"; the document stated, in part, the following:
 "THIS ASSIGNMENT is made on the 13th day of February, 1990, by and from HUNTSVILLE GOLF DEVELOPMENT, INC. ('Borrower') to SOUTHTRUST BANK OF HUNTSVILLE, NATIONAL ASSOCIATION ('Lender');
"WITNESSETH:
 "WHEREAS, Borrower is constructing . . . a residential condominium project and has requested Lender to provide a Construction Line in the principal amount of Two Million Two Hundred Twenty-Three Thousand and no/100 ($2,223,000.00) Dollars to Borrower to aid in the construction of the Condominium project. . . .
 "WHEREAS, Lender has agreed to provide Construction Line, provided among other things, that Borrower executed this instrument of assignment as additional security for the Line.
 "NOW, THEREFORE, in consideration of the foregoing, and in order to induce Lender to provide the Construction Line, and as additional collateral security for the Line, Borrower hereby grants, transfers and assigns to Lender, its successors and assigns, all its right, title and interest in and to those certain contracts, agreements and other documents relating to the Fairway *Page 1336 
Hills Condominium Project (the 'Contract Documents'), described as follows:
 "I. Construction contract between [the contractor for the project] and Borrower dated December 18, 1989, in the amount of $3,385,371.00.
". . . .
 "III. Drawings and specifications described in said construction contract. . . ."
(Emphasis added.)
The vice president of SouthTrust's commercial loan department, Rebecca Zugaro, testified that a set of the Fairway Hills architectural drawings was delivered to the bank. Zugaro stated that SouthTrust's retention of the drawings was a standard procedure to ensure the completion of the development if SouthTrust had to finish the project.
In 1991, after building 8 of the proposed 31 condominiums that were to comprise Fairway Hills, Huntsville Golf defaulted on its repayment of the SouthTrust construction loan. To settle the loan debt, Huntsville Golf conveyed the Fairway Hills real estate to SouthTrust. Zugaro testified that SouthTrust would not have agreed to the settlement if SouthTrust had not retained the architectural plans, because SouthTrust intended to complete the Fairway Hills project.
However, SouthTrust then sold the Fairway Hills development to Ratcliff, Inc. Ratcliff began to construct the condominiums, using the architectural drawings and specifications for the condominiums that Huntsville Golf had assigned to SouthTrust. Huntsville Golf then sued Ratcliff, asserting that it had converted the architectural plans.
To establish conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property. Covington v. Exxon Co.,U.S.A., 551 So.2d 935 (Ala. 1989). The plaintiff must establish that the defendant converted specific personal property to the defendant's own use and beneficial enjoyment. The plaintiff asserting conversion could also show that the defendant destroyed or exercised dominion over property to which, at the time of the destruction or exercise of dominion, the plaintiff had a general or specific title and of which the plaintiff was in actual possession or to which the plaintiff was entitled to immediate possession. Rice v. Birmingham Coal Coke Co., Inc.,608 So.2d 713 (Ala. 1992); Wilder v. Charles Bell Pontiac-Buick,Cadillac-GMC, Inc., 565 So.2d 205, 206 (Ala. 1990).
The evidence in the record, including the assignment document between Huntsville Golf and SouthTrust quoted above, clearly indicates that Huntsville Golf assigned its rights to the Fairway Hills architectural plans to SouthTrust as a condition of SouthTrust's agreement to make the construction loan. As also noted above, Huntsville Golf defaulted on the repayment of the construction loan that was mentioned in the assignment. SouthTrust, after selling the Fairway Hills development project to Ratcliff, acted properly in allowing Ratcliff to use the plans it had obtained pursuant to the loan agreement. Although SouthTrust did not specifically assign the architectural plans to Ratcliff at the time of the sale, SouthTrust subsequently executed a document assigning its interest in the plans to Ratcliff. These plans belonged to SouthTrust after the assignment from Huntsville Golf, and SouthTrust had the right to relinquish its interest in the plans to Ratcliff. Huntsville Golf did not own the Fairway Hills plans at that point and was not entitled to possession of the plans. Under the assignment from SouthTrust to Ratcliff, the plans became the property of Ratcliff; therefore, the plans could not properly be the subject of a conversion claim against Ratcliff by Huntsville Golf.
Huntsville Golf failed to produce substantial evidence to rebut Ratcliff's prima facie showing that no genuine issue of material fact existed. When a party opposing a properly supported motion for summary judgment offers no substantial evidence to contradict that presented by the movant, the trial court must consider that evidence uncontroverted, with no genuine issue of material fact existing. Voyager Guaranty Ins.Co. v. Brown, 631 So.2d 848 (Ala. 1993). Accordingly, the judgment of the trial court is affirmed.
AFFIRMED. *Page 1337 
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, STEAGALL, KENNEDY and COOK, JJ., concur.