Royce Ellis appeals from a judgment based on a jury verdict in favor of Anthony J. Alcuri, Jr.
On June 6, 1994, Anthony J. Alcuri, Jr. (nephew), filed a complaint against Royce Ellis (uncle), seeking possession of 47 cows and damages in the amount of $15,125 for the conversion of those cows.
The case proceeded to trial in November 1996. At trial, the uncle moved for a directed verdict, which the trial court denied. The case was submitted to the jury, which returned a verdict in favor of the nephew and awarded him compensatory damages in the amount of $15,000. The trial court entered a judgment based on that verdict.
Thereafter, the uncle filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. After a hearing, the trial court denied that motion.
The uncle appeals, contending that the trial court committed reversible error when it denied his motion for a directed verdict and when it denied his motion for a JNOV or, in the alternative, for a new trial. Specifically, the uncle contends that there was no question of fact to be presented to the jury because, he says, the nephew failed to show that the nephew had acquired any ownership rights in the cattle — an essential element of conversion.
At the outset, we note the following well-settled law regarding conversion:
 "To establish conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property. The plaintiff must establish that the defendant converted specific personal property to the defendant's own use and beneficial enjoyment. The plaintiff asserting conversion could also show that the defendant destroyed or exercised dominion over property to which, at the time of the destruction or exercise of dominion, the plaintiff had a general or specific title and of which the plaintiff was in actual possession or to which the plaintiff was entitled to immediate possession."
Huntsville Golf Dev., Inc. v. Ratcliff, Inc., 646 So.2d 1334,1336 (Ala. 1994) (citations omitted).
Additionally, we note that the standards for testing a motion for a directed verdict and a motion for a JNOV are the same, since both motions test the sufficiency of the evidence.Coley v. Walker, 655 So.2d 1005 (Ala.Civ.App. 1994). Both motions are measured by the substantial evidence rule. Bell v.Sugarwood Homes, Inc., 619 So.2d 1298 (Ala. 1993). The nonmoving party, therefore, must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact *Page 1268 
sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989). And, the entire evidence must be viewed in a light most favorable to the non-moving party. Gewin v. TCF Asset Management Corp.,668 So.2d 523 (Ala. 1995). We would further note that "[i]f there is any conflict in the evidence to be resolved by the jury, then [a] motion [for a directed verdict] should not be granted."Turner v. Liberty Nat'l Fire Ins. Co., 681 So.2d 589, 590
(Ala.Civ.App. 1996). In other words, "the trial court must let a question go to the jury if there is substantial evidence to support the theory of the complaint." Turner, 681 So.2d at 590. A motion for a JNOV "simply provides the trial court with an opportunity to review its earlier ruling denying a motion for a directed verdict." Martino v. Bruno's, Inc., 681 So.2d 602, 604
(Ala.Civ.App. 1996).
The record, when viewed in a light most favorable to the nephew, suggests the following: The uncle is a farmer and he raises cattle. From 1990 until 1994, the nephew lived on the uncle's farm and performed certain duties without pay,i.e., he built and maintained fences, bushhogged, cut and hauled hay, and fed and maintained the cows. The nephew testified that during this time, he had a full-time job with Wal-Mart, but he worked just as many hours, if not more, on the farm.
The nephew testified that in 1990, his uncle approached him, stating that he wanted to help the nephew get started in the cattle business to compensate the nephew for his hard work. As noted previously, the nephew contends that he had acquired 47 cows. The nephew's testimony at trial, regarding how he had acquired the 47 cows, was rather specific. According to the nephew, the uncle gave the nephew a total of 15 cows — 5 in 1990 and 10 in 1992. Two of those cows died. The remaining cows, however, apparently produced calves.
In 1992 the uncle and the nephew apparently entered into an agreement, whereby the nephew would purchase a bull to breed with all the cows. The uncle's bull had apparently gotten too old to breed. In return, the uncle agreed that he and the nephew would each receive 15 of the first 30 calves. The nephew testified that he paid approximately $900 for a bull.
By November 1993 the herd had apparently grown rather large, and the nephew expressed his desire to separate his cows from the main herd and to move his cows to another pasture. According to the nephew, the uncle requested that the nephew wait until the weather got warmer. Apparently, it was more convenient to feed the cows near the uncle's house during the winter months.
In March 1994 the nephew again expressed his desire to separate his cows from the main herd. The uncle, at this point, refused to allow the nephew to move the cows. According to the nephew, the uncle explained that he could not afford to give the nephew the cows because the nephew's aunt needed a back operation.
At trial the uncle denied telling the nephew that he would help him get started in the cattle business. The uncle further denied that he had given the nephew any cows. A great-nephew of the uncle, however, who once lived on the uncle's farm, testified at trial and stated the following:
 "Q. Has [the uncle] ever said anything in your presence about helping [the nephew] get into the cow business or cattle business?
 "A Yes, sir. One summer he did, after I left from there.
". . . .
 "Q. What did he say on this particular occasion, then?
 "A. On this particular occasion he told me he was going to put [the nephew] in the cow business and he was going to give him five cows. And each year he was going to give him more cows, because [the nephew] was going to help him mend fences and help him with his cows on the place, being I wasn't down there on the place anymore. [The uncle] and I were in business at one point."
Suffice it to say, the testimony at trial was conflicting. As such, the conflicting testimony precluded the trial court from entering a directed verdict on the conversion claim.Turner, supra. It is apparent that a *Page 1269 
question of fact existed as to whether the nephew had acquired any ownership rights in the cattle and, if he did, how he acquired those rights.
On appeal the uncle contends that the alleged agreement, under which the nephew claimed ownership, was void because, he says, it was vague and uncertain and violated the Statute of Frauds. We would note, however, that the trial court, in its oral charges to the jury, instructed the jury that it could find that the nephew acquired ownership of the cattle by virtue of a parole gift. The trial court recited to the jury the following elements of a gift: "An intention to give and surrender title to and dominion over the property. Delivery of the property to the donee. Acceptance of the property by the donee."
It is undisputed that the jury determined that the nephew was entitled to recover for the conversion. Therefore, the jury must have determined that the nephew was the rightful owner of the cows. Since the jury could have found that the nephew acquired title to the cows by virtue of a gift, we find it unnecessary to discuss the uncle's defenses regarding the vagueness and uncertainty of the oral agreement and the violation of the Statute of Frauds. Accordingly, we conclude that the trial court did not err in denying the directed verdict on the conversion claim.
The uncle also contends that the trial court erred in not granting his motion for a JNOV or, in the alternative, for a new trial because, he says, the jury's award of compensatory damages was based on mere speculation. As noted previously, the nephew requested $15,125 in damages. The jury awarded him $15,000.
The "general rule is that compensatory damages are intended only to reimburse one for the loss suffered by reason of an injury to person or property." Sessions Co. v. Turner,493 So.2d 1387, 1390 (Ala. 1986). At trial, the nephew testified that he based his valuation of the cows on his experience of attending weekly local sales. The following testimony was elicited from the nephew:
 "Q. What were cows worth per pound at the time you say that [the uncle] was giving you these cows?
 "A. At that time calves [were] bringing from eight to a dollar a pound. Cow pairs [were] bringing from around six hundred to eight hundred dollars. And a good pair of cows would probably bring you eleven hundred dollars a pair."
The uncle argues that the damages were speculative because the nephew failed to introduce any evidence regarding the weight, the sex, and the breed of the cows. We would note, however, that at trial, the uncle failed to object to the speculative nature of the nephew's testimony. In essence, we must assume that the uncle, an experienced cattle farmer, had knowledge regarding the particular breed of cows that he raised, the average weight of those cows, and the average price of those cows. The uncle, however, failed to introduce any evidence to contradict the nephew's basis of appraisal. Therefore, given the fact that the only evidence regarding the value of the cows was uncontradicted, the jury's award of $15,000 was proper. Sessions, supra.
Based on the foregoing, the trial court did not err in denying the uncle's motion for a directed verdict or in denying the uncle's motion for a JNOV or, in the alternative, for a new trial.
Consequently, the judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge Richard L. Holmes while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the judges concur. *Page 1270