Joseph M. Anderson and Angela Anderson petitioned this Court for a writ of certiorari to review the judgment of the Court of Civil Appeals affirming the trial court's summary judgment in favor of Smith's Towing Company, Inc., and its owners and employees Diane Smith and Doug Smith (the company and the individuals are hereinafter referred to collectively as "the Smiths") on the Andersons' claims of conversion and negligence per se in connection with repairs to a motor vehicle. See Anderson v.Smith's Towing Co., [Ms. 2011005, Oct. 11, 2002] 867 So.2d 1121
(Ala.Civ.App. 2002). We granted the Andersons' petition, and we affirm in part and reverse in part.
 I. Factual Procedural History
The facts are undisputed. Angela Anderson's mother owned a 1956 green Ford Thunderbird automobile. Angela's mother died in 1994, and Angela inherited the Thunderbird. Although the Andersons received possession of the Thunderbird in 1994, Angela's father, Elias Fonda, as executor of his wife's estate, retained the title to the Thunderbird. Fonda's address on the certificate of title is in Ohio.
The Andersons brought the Thunderbird from Ohio to Alabama, where they began restoring the vehicle. Joseph Anderson testified that he had the "body reworked" and the frame painted. In 1998, the Andersons made arrangements for Jeff Clark to repair the Thunderbird. Clark made several repairs to the Thunderbird before he decided to stop repairing automobiles for his livelihood. Clark then left the Thunderbird with the Smiths and testified that he told the Smiths how to contact Joseph Anderson who was "the guy that owns that green Thunderbird."
On or about May 12, 1999, the Smiths sold the Thunderbird to a third party without notifying Fonda or the Andersons. At the time of the sale, legal title to the Thunderbird remained in Fonda's name. After the sale, Fonda executed a durable power of attorney to Joseph Anderson granting him power of attorney concerning "matters relating to the 1956 Ford Thunderbird."
On November 15, 1999, the Andersons and Fonda sued the Smiths; they claimed that the Smiths converted the Thunderbird and that in violating the notification requirements of the Alabama Abandoned Motor Vehicles Act, §§ 32-13-1 to 8, Ala. Code 1975 ("the AAMVA"), the Smiths were negligent per se. The Smiths filed a motion for a summary judgment, arguing that because the Andersons did not hold legal title to the Thunderbird, they could not maintain an action alleging conversion. The Smiths also argued that they were under no duty under the AAMVA to notify the Andersons that they had sold the Thunderbird.
On March 11, 2002, the trial court entered a summary judgment in favor of the Smiths as to only the Andersons' claims[1] and made that judgment final pursuant to Rule 54(b), Ala.R.Civ.P. The Andersons initially appealed to this Court; however, we transferred the case to the Court of Civil Appeals pursuant to § 12-2-7(6), Ala. Code 1975. On appeal, the Andersons argued that they held a possessory interest in the Thunderbird and that therefore their claims of conversion and negligence per se were proper. The Court of Civil Appeals disagreed; it affirmed the judgment of the trial court. The Court of Civil Appeals stated: *Page 1128 
 "Although the facts indicate that Joseph and Angela Anderson were entitled to immediate possession of the Thunderbird, and had previously had actual possession of the vehicle, they did not have a general or specific title to the Thunderbird. Indeed, Joseph and Angela Anderson had a possessory interest in the Thunderbird; however, this possessory interest alone is insufficient to maintain an action for conversion. Ellis [v. Alcuri, 710 So.2d 1266 (Ala.Civ.App. 1997)]. The Ohio title to the Thunderbird, attached as an exhibit to Smith's motion for summary judgment, indicates Elias Fonda had legal title to the vehicle. Accordingly, Joseph and Angela Anderson did not have legal title to the vehicle, and, therefore, the trial court did not err in granting summary judgment with regard to Joseph and Angela Anderson's claim of conversion.
 "Likewise, the trial court did not err in granting summary judgment in favor of [the Smiths] on Joseph and Angela Anderson's claim of negligence per se under the [AAMVA]. The four elements of negligence per se are (1) that the statute was enacted to protect a class of persons that includes the litigant seeking to assert the statute; (2) that the injury was of the type contemplated by the statute; (3) that the party charged with negligent conduct violated the statute; and (4) that the statutory violation proximately caused the injury. Sparks v. Alabama Power Co., 679 So.2d 678, 685 n. 2 (Ala. 1996); Fox v. Bartholf, 374 So.2d 294 (Ala. 1979). Joseph and Angela Anderson argue that the circuit court erred in finding that they were not among the class of persons protected under § 32-13-1 et seq., Ala. Code 1975.
". . . .
 "After a careful review of the statute, we conclude that Joseph and Angela Anderson were not among the class of persons protected by the [AAMVA], where they did not have legal title to the vehicle, and where they were acting on behalf of their own interests when they took action to repair the Thunderbird. Therefore, the class of persons protected under the [AAMVA] does not include a future titleholder's interest or the interest of an heir. Indeed, this court's prior holdings with regard to the [AAMVA] have limited the protected class of persons to those with secured interests. Global Federal Credit Union [v. Walker, 679 So.2d 1075 (Ala.Civ.App. 1996)]. Based on the foregoing, the trial court did not err in granting [the Smiths'] motion for summary judgment as to the negligence claim."
Anderson, 867 So.2d at 1124-25.
 II. Standard of Review
We review a ruling on a motion for a summary judgment de novo. In so doing, we review the evidence in the light most favorable to the nonmoving party and apply "the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988). A summary-judgment motion is to be granted when the evidence demonstrates that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P; Oliver v. Woodward, 824 So.2d 693, 697 (Ala. 2001).
In order to defeat a properly supported summary-judgment motion, the nonmoving party must present substantial evidence creating a genuine issue of material fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence *Page 1129 
of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989).
 III. Conversion Claim
To prove conversion, the Andersons must present evidence of "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse." Ott v. Fox, 362 So.2d 836,839 (Ala. 1978); Huntsville Golf Dev., Inc. v. Ratcliff, Inc.,646 So.2d 1334, 1336 (Ala. 1994). The Andersons "must establish that the [Smiths] converted specific personal property to [their] own use and beneficial enjoyment." Huntsville Golf, 646 So.2d at 1336.
The sole issue involved in the Andersons' conversion claim is the "title-possession" element of conversion. See Roberson v. Ammons,477 So.2d 957, 962 (Ala. 1985). The Andersons cite § 6-5-261, Ala. Code 1975, and argue that their mere possession of the Thunderbird is sufficient to maintain their conversion action. Section 6-5-261
provides: "Mere possession of a chattel, if without title or wrongfully, will give a right of action for any interference therewith, except as against the true owner or the person wrongfully deprived of possession." The Andersons argue that their possessory interest in the Thunderbird gives them a cause of action against the Smiths, who are neither the true owners of the Thunderbird nor the persons wrongfully deprived of its possession. Alternatively, they argue that the power of attorney executed by Fonda to Joseph Anderson clarifies Joseph's authority to act on behalf of Fonda and to maintain this conversion action.
The Smiths, on the other hand, argue that without legal title to the Thunderbird, the Andersons cannot maintain their conversion action. They further claim that the Andersons did not have the requisite possessory interest at the time of the alleged conversion. The Smiths argue that this Court has repeatedly held that to maintain a conversion claim a plaintiff must have both the legal title to and a right of possession in the allegedly converted property.
The Court of Civil Appeals agreed with the Smiths. It held that the Andersons' possessory interest alone was insufficient to support their conversion action. This Court has previously stated that both general or specific title to the property and a possessory interest in the property are elements of conversion. See Huntsville Golf, 646 So.2d at 1336 (a plaintiff can prove conversion by showing that "the defendant destroyed or exercised dominion over property to which, at the time of the [defendant's] destruction or exercise of dominion, the plaintiff had a general or specific title and of which the plaintiff was in actual possession or to which the plaintiff was entitled to immediate possession"); Hamilton v. Hamilton, 255 Ala. 284, 289, 51 So.2d 13, 18
(1950) ("To be entitled to the right of recovery for conversion, plaintiff must have general or special title to the property in question,and the possession or immediate right of possession. . . ."); Roberson, 477 So.2d at 962 ("Legal title with immediate right of possession by the plaintiffs to the converted property at the time of conversion is a necessary element of the conversion action.").
However, this Court has also stated that either title or possession is sufficient to maintain a conversion action. Ott, 362 So.2d at 839 ("The gist of the [conversion] action is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession); *Page 1130 Lapeyrouse Grain Corp. v. Tallant, 439 So.2d 105, 108 n. 1 (Ala. 1983) (a requisite element of conversion is the plaintiff's "ownership or right of possession"); Empiregas, Inc., of Gadsden v. Geary, 431 So.2d 1258,1260-61 (Ala. 1983) (claim of conversion lies where the plaintiff has an immediate right of possession); Baxter v. SouthTrust Bank of Dothan,584 So.2d 801, 805 (Ala. 1991); Keith v. Witt Auto Sales, Inc.,578 So.2d 1269, 1274 (Ala. 1991).
In Ott, supra, a creditor sold property to a debtor under an agreement that allowed the creditor to reclaim possession of the property if the debtor's payments were late. 362 So.2d 838. The debtor brought an action alleging conversion and wrongful repossession when the creditor reclaimed possession of the property and sold it to third parties. 362 So.2d at 838. Based upon testimony that the creditor agreed to accept a late payment from the debtor, this Court affirmed the judgment entered on the jury verdict in favor of the debtor. 362 So.2d at 839-41. The creditor later filed a legal-malpractice action against his attorneys, arguing, among other things, that his attorneys had failed to prove that the debtor did not actually own the property and that therefore the debtor had no standing to file an action alleging conversion. In Ott v. Smith,413 So.2d 1129, 1131 (Ala. 1982), this Court found that the creditor's contentions were without merit:
 "Irrespective of who owned the [property], however, the law in Alabama is clear that to support an action for conversion, there must be a concurrence of the right of property, be it general or special, and possession or an immediate right of possession. Stathem v. Ferrell, 267 Ala. 333, 101 So.2d 546
(1958). See also, [Ala.] Code 1975, § 6-5-261
(giving a right of action for conversion to a person with mere possession). Therefore, outright ownership is not essential to support an action for conversion.
According to the testimony given, both in [Ott v. Fox, 362 So.2d 836, 839 (Ala. 1978),] and by the expert witnesses in this action, we believe that there was sufficient evidence for a jury to find that [the plaintiff-debtor] did have standing to sue for the conversion of the [property], and that no estoppel would work here against the defendants."
Ott v. Smith, 413 So.2d at 1134 (emphasis added).
Moreover, in Roberson, supra, the plaintiffs executed a note in the defendants' name using their vehicle as collateral. 477 So.2d at 959. The plaintiffs defaulted on the note, and the defendants impounded the plaintiffs' vehicle. 477 So.2d at 960. At the time of the alleged conversion, the plaintiffs did not hold legal title to their vehicle. 477 So.2d at 960. This Court stated the rule that "[l]egal title with
immediate right of possession by the plaintiffs to the converted property at the time of conversion is a necessary element of the conversion action." 477 So.2d at 962 (emphasis added). However, despite the fact that the plaintiffs were not the legal title holders of the vehicle at the time of the conversion, this Court found that the "title-possession" element was met because the plaintiffs presented evidence indicating that they had previously transferred the title to another lender and they provided an Alabama license registration certificate in their name and a bill of sale for the vehicle. 477 So.2d at 962. See also Wingfield MotorCo. v. Dupont, 24 Ala. App. 262, 134 So. 37 (1931) (the plaintiff maintained a conversion action despite the fact that title to the car remained with the seller); Wolfe v. McClung, 445 So.2d 913 (Ala.Civ.App. 1983) (the plaintiff, who did not have legal title, maintained a conversion action because of his prior dominion and control *Page 1131 
over the automobile for a period of six months).
In the present action, it is clear that the Andersons do not hold legal title to the Thunderbird. However, as the Court of Civil Appeals recognized: "[T]he facts indicate that [the Andersons] were entitled to immediate possession of the Thunderbird, and had previously had actual possession of the vehicle. . . ." Anderson, 867 So.2d at 1124. The Andersons exercised control of the Thunderbird by taking possession and making repairs for over four years just as the plaintiffs in both Ott v.Fox, supra, and Roberson, supra, held possessory interests in the property at issue in those cases. See also Empiregas, 431 So.2d at 1260-61 (a plaintiff who had a possessory interest in a gas regulator was allowed to submit a conversion claim to the jury against the entity that actually owned the regulator).
The Court of Civil Appeals relied upon the rule that general or specific title and a possessory interest are requisite elements of conversion as stated in Ellis v. Alcuri, 710 So.2d 1266, 1267
(Ala.Civ.App. 1997). In Ellis, a nephew sued his uncle for the conversion of cattle the uncle had allegedly given to his nephew as compensation for his labor and to help him get started in the cattle business. 710 So.2d at 1268. A jury entered a verdict in favor of the nephew, and the trial court entered a judgment on that verdict. The uncle appealed; he argued that his nephew had failed to show that he had acquired "ownership rights" in the cattle. 710 So.2d at 1267. The facts did not indicate whether the nephew held title to the cattle, either general or specific. The court stated that "a question of fact existed as to whether the nephew had acquired any ownership rights in the cattle" and held that "the jury must have determined that the nephew was the rightful owner of the cows." 710 So.2d at 1269. The court in Ellis acknowledged that the jury could have found that the nephew was entitled to ownership by virtue of a gift, just as in the present action a jury could find that the Andersons are entitled to "ownership rights" pursuant to Angela's mother's bequest of the Thunderbird to Angela. 710 So.2d at 1269.
Moreover, as the Andersons argued, § 6-5-261 gives a right of action to those who possess personal property, without title, against the interference of another who is neither the true owner nor a person wrongfully deprived of possession. Although this Court stated in Arledgev. J.D. Pittman Tractor Co., 236 Ala. 131, 132, 181 So. 91, 91 (1938), that § 5668 of the Code of 1923, which is identical to the current §6-5-261, is "merely declaratory of the common law that possession is evidence of title and proof of possession in the plaintiff will sustain an action as against a wrongdoer without title who injures, converts, or takes chattels from such possession," this Court also later stated that § 6-5-261 gives a person with mere possession a right to bring an action alleging conversion. Ott v. Smith, 413 So.2d at 1134; Birmingham SouthernRy. v. Goodwyn, 202 Ala. 599, 81 So. 339 (1919).
This right of action under § 6-5-261, coupled with the holdings ofOtt v. Smith, Roberson, and Empiregas, makes it clear that the Andersons can maintain their conversion action based upon their possessory interest in the Thunderbird against the Smiths, who are neither the true owners of the Thunderbird nor persons who have been wrongfully deprived of its possession. The Andersons presented substantial evidence indicating their right to possess the Thunderbird. Because we find that a possessory interest is sufficient to maintain this action for conversion, we do not address the Andersons' theory that they are entitled to maintain this action *Page 1132 
based upon the power of attorney to Joseph Anderson executed by Fonda.
We emphasize that our holding should not be interpreted as overruling our prior decisions that state that general or specific title and
possession are both requisite elements of conversion. Our holding is limited to a set of facts under which the plaintiff can maintain an action for conversion with only a possessory interest against another who is not the true owner or who has not wrongfully been deprived of possession. The cases the Smiths cite can be distinguished on this ground. See Huntsville Golf, supra, 646 So.2d at 1336 (property could not be subject to a conversion claim because the property belonged to the defendant under an assignment); American Nat'l Bank Trust Co. ofMobile v. Robertson, 384 So.2d 1122 (Ala.Civ.App. 1980) (when the plaintiff defaulted on a loan, title and right of possession to vehicle on which creditor had security interest passed to the defendant-creditor);Pierce v. Ford Motor Credit Co., 373 So.2d 1113 (Ala.Civ.App. 1979); CityCar Sales, Inc. v. McAlpin, 380 So.2d 865 (Ala.Civ.App. 1979) (defendant insurance company had superior title to the property); Thompson v. FordMotor Credit, 550 F.2d 256 (5th Cir. 1977) (defendant-creditor had legal title and right to possession of property used as security upon the plaintiff's default on the loan).
 IV. Negligence Per Se Claim
The Andersons present a question of first impression regarding the standing to bring a claim alleging a violation of the AAMVA. Section32-13-4(a), Ala. Code 1975, provides that at least 30 days before the sale of an "abandoned motor vehicle," a "wrecker service," such as Smith's Towing Company, "shall give written notice to the owner, securedparties of record, and known lienholders, if any," of the sale of the vehicle. (Emphasis added.) If the name of the owner, secured parties, or lienholders "cannot be reasonably ascertained," then the seller must publish a notice "once a week for two successive weeks in a newspaper of general circulation in the county in which the sale is to be held." § 32-13-4(b).
It is undisputed that the Smiths failed to comply with the notice requirements of § 32-13-4. Regardless of this failure, the Smiths claim that the Andersons, as future title holders or heirs, are not within the class of persons protected by the statute — an element of negligence per se. See Sparks v. Alabama Power Co., 679 So.2d 678, 685
n. 2 (Ala. 1996). The Andersons, however, claim that because the Smiths knew that Joseph was the "owner" of the Thunderbird and because they knew how to contact him, the Smiths were under a duty to notify the Andersons of the sale. The Andersons claim that the word "owner" as used in §32-13-4 is not limited to the holder of legal title and that the AAMVA was enacted for the purpose of affording notice of the sale of an abandoned motor vehicle "to any interested parties." Andersons' brief, p. 6. We disagree.
Section 32-13-4 specifically delineates three classes of persons protected by the AAMVA — owners, secured parties, and known lienholders. The Court of Civil Appeals stated that while it had previously recognized that secured parties and lienholders are protected by the AAMVA, it has not previously held that a future titleholder or an heir is directly affected under the AAMVA. See Global Fed. Credit Union v. Walker,679 So.2d 1075 (Ala.Civ.App. 1996); see also DeRamus Exxon, Inc. v.Wyatt, 636 So.2d 450 (Ala.Civ.App. 1994) (recognizing that the AAMVA applied to owners).
The Andersons cite several statutes for their proposition that the word "owner" is not limited to legal title holders. See, e.g., *Page 1133 
§ 32-7-2(8), Ala. Code 1975; § 32-7A-2(13), Ala. Code 1975; § 32-8-2
(mistakenly cited by the Andersons as § 38-8-2), Ala. Code 1975; §32-6-210, Ala. Code 1975. The Andersons quote phrases from those statutes and argue that the word "owner" includes persons "having the property in," "with an immediate right of possession," and "entitled to the use and possession of a vehicle." Andersons' brief, pp. 7-8. Even if we were to conclude that the various definitions of the word "owner" as proposed by the Andersons apply to § 32-13-4, we cannot conclude that the definitions — when analyzed in their entirety — encompass the Andersons' possessory interest within the scope of the word "owner."
Section § 32-8-2(13) provides:
 "(13) Owner. A person, other than a lienholder, having the property in or title to a vehicle or manufactured home. The term includes a person entitled to the use and possession of a vehicle or manufactured home subject to a security interest in another person, but excludes a lessee under a lease not intended as security. Under any lease-purchase or installment sales agreement where a governmental agency, either city, county or state, is the lessee or purchaser with a security interest or right to purchase, such lessee or purchaser shall be the owner for purposes of this chapter."
(Emphasis added.) Section 32-7A-2(13) provides:
"Owner. Any of the following persons:
 "a. A person or persons holding the legal title to a motor vehicle, unless paragraph b. or c. is applicable.
 "b. The mortgagor, debtor, conditional vendee, or lessee of a vehicle that is the subject of a chattel mortgage, lien, agreement for the conditional sale thereof, lease or other like agreement with the right of purchase upon performance of the conditions stated in the agreement and with the immediate right of possession vested in the mortgagor, debtor, conditional vendee, or lessee, in which event the mortgagor, debtor, conditional vendee, or lessee shall be deemed the owner for purposes of this chapter.
 "c. The lessee of a vehicle owned by the United States of America or any of its agencies or instrumentalities."
(Emphasis added.) Section 32-7-2(8) provides:
 "(8) Owner. A person who holds the legal title of a motor vehicle, or in the event a motor vehicle is the subject of an agreement for the conditional sale or lease of the motor vehicle with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee, or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then the conditional vendee, or lessee, or mortgagor shall be deemed the owner for the purposes of this subdivision."
(Emphasis added.)
The above-emphasized phrases in each definition of the word "owner," when read in the context of the entire definition, make it clear that the Andersons are not "owners" entitled to the protection of the AAMVA. At the time of the conversion, the Andersons did not have actual possession of the Thunderbird; they did not hold it subject to a security interest; and they were not mortgagors, debtors, conditional vendees, or lessees of the Thunderbird. We conclude that the Andersons' claim does not constitute that of an "owner" within § 32-13-4.
 V. Conclusion
Because we find that the Andersons presented substantial evidence indicating that *Page 1134 
they had a possessory interest in the Thunderbird in order to maintain a conversion action against the Smiths, we reverse the judgment of the Court of Civil Appeals entered in favor of the Smiths on the conversion claim. We affirm the judgment of the Court of Civil Appeals on the negligence per se claim.
AFFIRMED IN PART; AND REVERSED IN PART.
HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., concurs in part and dissents in part.
[1] Elias Fonda, the legal title holder of the Thunderbird, was also a plaintiff in this action. Fonda's claims are still pending before the trial court.