On Application for Rehearing
 

 THOMPSON, Presiding Judge.
 

 The opinion of September 10, 2010, is withdrawn, and the following is substituted therefor.
 

 This is the second time these parties have been before this court. The following sets forth the factual and procedural history of the underlying dispute:
 

 “On January 16, 2008, Vitaly Mor gun-genko and Lana Morgungenko filed in the trial court an objection to the pro
 
 *930
 
 posed sale of a purportedly abandoned vehicle by Dwayne’s Body Shop (‘Dwayne’s’). Dwayne’s had sought to sell the vehicle at issue pursuant to the Abandoned Motor Vehicle Act (‘the Act’), § 32-13-1 et seq., Ala.Code 1975, in order to recover storage fees and the cost of certain repairs it had performed on the vehicle. In their objection, the Morgungenkos indicated that they were the owners of the vehicle at issue and that Dwayne’s had performed repairs on the vehicle that they contended were not authorized.
 

 “The trial court scheduled the matter for a hearing. The Morgungenkos then filed a motion seeking permission to file a complaint alleging claims of detinue and conversion. On June 4, 2008, the trial court entered an order allowing the Morgungenkos to file their complaint but specifying that ‘the trial of said complaint shall be severed from and heard separately apart from any hearing which may be held’ pertaining to their objection to the sale of the purportedly abandoned vehicle.
 

 “Dwayne’s moved to dismiss the Mor-gungenkos’ objection and complaint, alleging that the Morgungenkos were not the owners of the vehicle at issue and, therefore, that they lacked standing in this matter. In support of its motion to dismiss, Dwayne’s submitted to the trial court a printout of a document indicating that Yuri Morgungenko was the registered owner of the vehicle.
 

 “The trial court conducted an ore ten-us hearing. We note that at that hearing Dwayne’s argued and presented evidence regarding the issue whether the Morgungenkos had standing to assert their claims pertaining to the vehicle.
 

 “On July 9, 2008, the trial court entered an order finding the vehicle to be an ‘abandoned vehicle,’ as that term is defined in § 32-13-1, Ala.Code 1975, and ordering that the vehicle be sold at public auction. In its July 9, 2008, order, the trial court also stated that it had made no determination as to whether the storage fees claimed by Dwayne’s were reasonable and that it would conduct a future hearing on that issue if any party requested such a hearing.
 

 “The Morgungenkos filed a motion requesting a hearing on the reasonableness of the claimed storage fees and seeking a stay of the sale of the vehicle. Dwayne’s filed what it characterized as a Rule 59, Ala. R. Civ. P., ‘motion to alter, amend, or vacate the judgment.’1 The trial court scheduled the pending motions for a hearing on August 6, 2008, and it later rescheduled the hearing for September 29, 2008. However, on August 18, 2008, the Morgungenkos filed a notice of appeal. The appeal was transferred to this court by the supreme court, pursuant to § 12-2-7(6), AIa.Code 1975.
 

 "1 ‘[A] Rule 59 motion may be made only in reference to a final judgment or order.’
 
 Malone
 
 v.
 
 Gainey,
 
 726 So.2d 725, 725 n. 2 (Ala.Civ.App.1999)."
 

 Morgungenko v. Dwayne’s Body Shop,
 
 23 So.3d 671, 672-73 (Ala.Civ.App.2009).
 

 The vehicle at issue is a Kenworth W-900 diesel truck commonly known as a “tractor-trailer” or “semi truck.” On or about June 7, 2007, the vehicle was involved in a collision in or near Tallahassee, Florida. At the time of the accident, the vehicle was driven by Yuri Morgungenko (‘Yuri”), Vitaly Morgungenko’s brother.
 

 The record indicates that after the accident, at the direction of the vehicle’s insurer, the vehicle was towed to a Kenworth dealer in Dothan. The Kenworth dealer, because it could not perform the necessary repair work on the vehicle, had the vehicle
 
 *931
 
 towed to the premises of Dewayne’s Paint & Body, LLC (“Dewayne’s”),
 
 [1]
 
 for the necessary repairs. Vitaly Morgungenko (“Morgungenko”) testified that when he and his wife called the Kenworth dealer to check on the progress of the repairs, they learned that the Kenworth dealer had sent the vehicle to Dewayne’s. According to Morgungenko, the vehicle was already at Dewayne’s shop when he learned of that transfer.
 

 Dewayne Howard, the owner of Dewayne’s, testified that the vehicle arrived at his shop on June 29, 2007. Howard testified that he initially spoke with Yuri, who is the registered owner of the vehicle, about the repairs to the vehicle. Howard stated that, after the vehicle arrived at Dewayne’s shop, he spoke with the insurance adjusters and prepared and submitted an estimate for repairs. Howard stated that he “had talked with [Yuri and Morgungenko] during the estimate before anything was ever, you know, confirmed that were [sic] agreed on with the estimate” and that he had talked to one or both of them on the telephone eight or nine times before he began working on repairing the vehicle. Morgungenko testified that Howard did not present him with an estimate before he began repairing the vehicle. The record indicates that Dewayne’s began the repair process for the vehicle on July 17, 2007.
 

 Howard testified that he first met Mor-gungenko when Morgungenko came to his shop on August 2, 2007, to discuss the repairs and the estimate. According to Howard, the only work done on the vehicle at that point had been “the tear-down process and starting on some of the repairs on the fiberglass.” Howard acknowledged that Morgungenko expressed some concern about the nature of the repairs or the quality of the parts to be used in repairing the vehicle.
 

 Howard stated that the next day, Friday, August 3, 2007, he received the special-order parts for the repairs. He stated that, on that same date, Morgungenko telephoned and instructed him to stop working on the truck because the check for the repairs issued by the insurance company had been stolen. Howard testified that, at that point, he stopped all work on the vehicle.
 

 Morgungenko testified that he was not satisfied with the quality of work Dewayne’s had performed on the truck and that, after he visited the shop, he requested that all work be stopped so that he could transfer the vehicle to another repair facility. Howard testified that he learned sometime after that request that there was no problem with the insurance check, as he said he had been led to believe, but that Morgungenko was not happy with the repair work.
 

 Howard testified that on Monday, August 6, 2007, Yuri and Morgungenko contacted him and requested a bill or statement from Dewayne’s so that they could pay Dewayne’s and move the truck to another facility for repairs. Howard testified that he believed the original bill for the repairs performed and the parts ordered to that point was approximately $21,000. It is undisputed that a large part of that original $21,000 bill included storage fees charged from the time the vehicle arrived at Dewayne’s shop. Howard stated that it was Dewayne’s policy to charge $150 per
 
 *932
 
 day for storage fees if a vehicle was in the shop; the record indicates that Dewayne’s charged $55 per day for storage fees for a vehicle parked in its lot. Howard stated that he persuaded a supplier to allow him to return some of the ordered parts, which reduced the bill to approximately $10,000 to $11,000, including Dewayne’s charges for storage fees. However, he refused to remove the storage charges from the bill.
 

 Morgungenko contested the amount of the initial bill from Dewayne’s. Specifically, Morgungenko objected to the imposition of the storage fees. Morgungenko testified that he had not authorized the storage fees but that Howard had told him that it was Dewayne’s policy to charge such fees and that those charges could not be removed from the bill. Howard acknowledged that each amount he demanded Morgungenko pay included storage-fee charges and that he had no agreement with anyone connected with the vehicle pertaining to the imposition of storage fees.
 

 Morgungenko and Howard began negotiations to settle their dispute about the bill. On September 13, 2007, Morgungen-ko and Howard reached an agreement, set forth on an invoice, that established the total due from Morgungenko at $11,676.28. However, Morgungenko did not pay the amount specified in the September 13, 2007, agreement. Morgungenko testified that he signed the agreement because Howard told him that, if he did not sign it, Howard would have the vehicle towed to another repair shop; however, Morgun-genko did not seek in the trial court to have the September 13, 2007, agreement invalidated.
 

 Both Howard and Morgungenko testified that they continued to attempt to settle their dispute after Morgungenko failed to pay the amounts set forth on the September 13, 2007, invoice he and Howard had signed. Morgungenko testified that he made several offers for payment that did not include amounts for storage fees and that those amounts would have covered the cost of the billed repairs excluding the storage fees. Howard testified that he believed on several occasions that he had reached an agreement with either Morgungenko or Yuri but that the bill was never paid. Howard acknowledged that each amount he demanded included ever-increasing storage fees. Howard explained:
 

 “Q. And every bill you had that you tried to negotiate with them had $150 a day storage fee?
 

 “A. Yes, sir.
 

 “Q. And there was no agreement between you and anyone that they would be responsible for a storage fee?
 

 “A. Any vehicle left on my yard is subject to a storage fee. Being it a job that totals out and no repairs are done, it’s a storage fee. Any insurance company, anybody.
 

 “Q. Under what pro-vision of the law? Do you know?
 

 “A. I don’t know the law on that, no, sir. But it’s ... I don’t know the law on that.”
 

 After several months of continued negotiations, the parties did not reach an agreement, and in December 2007 Howard sought to have the vehicle sold pursuant to the Abandoned Motor Vehicle Act (“the Act”), § 32-13-1 et seq., Ala.Code 1975, to recover the costs of the repairs and the storage fees he had charged.
 

 We note that before the trial court Dewayne’s contended that Morgungenko lacked standing under the Act to object to the proposed sale of the vehicle because Morgungenko did not have title to the vehicle. At the time of the accident, the title to the vehicle was in Yuri’s name.
 
 *933
 
 Morgungenko testified that he had purchased the vehicle from Yuri for a price of $65,000. Morgungenko presented evidence indicating that he had made a lump-sum payment of $50,000 toward the purchase of the vehicle and that he had obtained possession of the vehicle in December 2006. Morgungenko testified that he had made installment payments to Yuri for the remainder of the purchase price of the vehicle. Yuri confirmed those facts in his testimony. According to Morgungenko and Yuri, Morgungenko paid the remainder of the amount owed to Yuri on September 7, 2007, while Morgungenko was still negotiating with Howard for the return of the vehicle. Yuri testified that he signed a document transferring title to Morgungenko in September 2007. However, for technical reasons, Morgungenko was unable to obtain a new title to the vehicle from the State of Missouri.
 
 [2]
 

 In its July 9, 2009, judgment, the trial court found, among other things, that the Morgungenkos lacked standing to object to a determination that the vehicle was abandoned under the Act or to the sale of the vehicle and that, even if the Morgungenkos had standing, the vehicle was an “abandoned vehicle” under the Act. The trial court also found in favor of Dewayne’s on the Morgungenkos’ counterclaims and on their claim challenging the constitutionality of the Act. The Morgun-genkos timely appealed.
 

 The Morgungenkos first contend on appeal that the trial court erred in finding that they had no standing in this matter. A vehicle can be termed an “abandoned motor vehicle” under the Act under several circumstances. With regard to the particular facts of this case, an “abandoned motor vehicle” is one which “has been left by
 
 the owner, or some person acting for the oumer,
 
 with [a] ... repairman ... for repair or for some other reason.... ” § 32-13-1(1), Ala.Code 1975 (emphasis added). In order to sell an allegedly abandoned motor vehicle, notice of the sale must be provided to “the current owners, registrants, secured parties, and lienhold-ers of record, if any, for the motor vehicle,” § 32-13-4(a), AIa.Code 1975, and those persons may request a hearing to determine whether the vehicle is an “abandoned motor vehicle” under the Act. § 32-13-4(c), Ala. Code 1975. The Act does not define the term “owner.” However, Title 32, which contains statutes regarding motor vehicles and traffic, and of which the Act is a part, does contain a definition of the term “owner.”
 

 “The following words and phrases when used in [Title 32] shall, for the purpose of this title, have meanings respectively ascribed to them in this section, except when the context otherwise requires:
 

 [[Image here]]
 

 “(38) Owner. A person, other than a lienholder, having the property in or title to a vehicle.
 
 The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person,
 
 but excludes a lessee under a lease not intended as security.”
 

 § 32-1-1.1, Ala.Code 1975 (emphasis added).
 

 Further, in
 
 Ex parte Anderson,
 
 867 So.2d 1125 (Ala.2003), this court cited a number of other definitions of the term “owner” as defined for the purposes of other, specific chapters in Title 32. All of those definitions included, in addition to
 
 *934
 
 the holder of the legal title to the vehicle, those persons who have contracted for the right to purchase the vehicle and those persons who have the right of possession of the vehicle.
 
 Ex parte Anderson,
 
 867 So.2d at 1132-38 (citing § 32-8-2(13), § 32-7A-2(13), and § 32-7-2(8), Ala.Code 1975). In
 
 Ex parte Anderson,
 
 the parties seeking to oppose the sale of the vehicle pursuant to the Act had only a possessory interest in the vehicle; they were not the titleholders and were not purchasing the vehicle. The facts of this case are distinguishable from those of
 
 Ex parte Anderson.
 

 In this case, the evidence is undisputed that Morgungenko had the use and possession of the vehicle pursuant to his agreement to purchase the vehicle from Yuri. Morgungenko presented evidence indicating that he had paid $50,000 toward the purchase price of the vehicle and that he was making installment payments on the remainder of the $65,000 purchase price for the vehicle at the time the accident occurred. Thus, we conclude that Mor-gungenko was an owner of the vehicle at the time of the accident and at the time the vehicle was transferred to Dewayne’s shop.
 

 Shortly after the accident, Morgungenko paid the last amounts he owed Yuri to purchase the vehicle and Yuri attempted to transfer title to Morgungenko. That transfer of title could not be completed for technical reasons. However, we refuse to hold that a purchaser of a vehicle is not the “owner” of the vehicle for the purposes of the Act merely because of the failure of a formality regarding the certificate of title.
 

 Accordingly, we conclude that the trial court erred in determining that Mor-gungenko did not have standing to contest the proposed sale of the vehicle as an abandoned motor vehicle. However, this court may affirm a correct judgment even if the trial court cites an incorrect reason or finding for that judgment.
 
 Boykin v. Magnolia Bay, Inc.,
 
 570 So.2d 639, 642 (Ala.1990);
 
 Montgomery v. Couturier,
 
 373 So.2d 625, 627 (Ala.1979). As is explained below, we affirm the trial court’s judgment as it pertains to Morgungenko on another basis.
 

 We note that Lana Morgungenko (“Lana”) has failed to present evidence indicating that she has an interest in the vehicle; all the evidence in the record on appeal pertained to Morgungenko’s purchase of the vehicle. Therefore, we affirm that part of the trial court’s judgment concluding that Lana did not have standing to contest the proposed sale of the vehicle.
 

 Morgungenko next argues that the trial court erred in determining that the vehicle was abandoned. Under the facts of this case,
 

 “an ‘abandoned motor vehicle’ shall mean a motor vehicle as defined in Section 32-8-2:
 

 “(1) Which has been left by the owner, or some person acting for the owner, with an automobile dealer, repairman or wrecker service for repair or for some other reason and has not been called for by the owner or other person within a period of 60 days after the time agreed upon and within 60 days after the vehicle is turned over to a dealer, repairman or wrecker service when no time is agreed upon, or within 60 days after the completion of necessary repairs.”
 

 § 32-13-1(1), Ala.Code 1975.
 

 As part of his argument that the trial court erred in finding the vehicle to be abandoned under the Act, Morgungenko argues that Dewayne’s had no proper basis
 
 *935
 
 for charging storage fees during the time it was repairing the vehicle. He further maintains that Dewayne’s cannot base its claim of abandonment on his refusal to pay what he contends are unlawful charges. There is arguable merit to those contentions. However, we do not address those issues, because there is an alternative basis upon which we may affirm the trial court’s judgment.
 
 See Boykin v. Magnolia Bay, Inc.,
 
 570 So.2d at 642 (this court may affirm a correct judgment for any reason). As Dewayne’s points out, on September 13, 2007, Howard and Morgungen-ko entered into an agreement resolving their dispute regarding Dewayne’s bill for the repairs and storage fees for the vehicle. That agreement, which is set forth on an invoice detailing the specific costs of items or services charged by Dewayne’s, states in pertinent part:
 

 “Storage fee while in shop from 7/17 to 09/07/2007. Storage will be added daily. Storage fee has been adjusted to an agreed price of $5,000 if bill is paid before day’s end of 09/14/2007.
 

 “This bill has be[en] reduced by dropping storage from $7,950 to $5,000. The fuel tank core charge has been removed. We have been given permission to remove their tank for core — $686.88. The parking lot storage has been removed as a courtesy @ $900. $270 for estimate fee was removed, also as a courtesy.”
 

 The total amount due under the September 13, 2007, agreement was $11,676.28. Both Howard and Morgungenko signed the September 13, 2007, invoice setting forth the terms of the agreement.
 

 On December 12, 2007, Dewayne’s notified Yuri and Morgungenko, among others, of its intention to seek the sale of the vehicle pursuant to the Act. On January 7, 2008, the Morgungenkos filed in the trial court an objection to the proposed sale of the vehicle. Dewayne’s argued before the trial court, and reasserts before this court, that Morgungenko had failed to “call for” the vehicle within 60 days of September 13, 2007, the date of their agreement.
 
 See
 
 § 32-13-1(1), Ala.Code 1975 (An abandoned motor vehicle is one that “has not been called for by the owner or other person [acting for the owner] within a period of 60 days after the time agreed upon and within 60 days after the vehicle is turned over to a dealer, repairman or wrecker service when no time is agreed upon, or within 60 days after the completion of necessary repairs.”).
 

 The record supports a finding that the parties entered into a valid agreement regarding the amount Dewayne’s would accept for the services it had provided and Morgungenko would pay for those services. In exchange for a promise of payment, Dewayne’s reduced or removed several itemized charges on its invoice. Although Morgungenko continued to attempt to negotiate another agreement with Dewayne’s after he signed the September 13, 2007, agreement, those attempts were unsuccessful. Further, before the trial court, Morgungenko did not seek to set aside or invalidate that agreement.
 
 [3]
 

 
 *936
 
 The latest date on which to start the running of the period for determining abandonment under the Act is September 14, 2007. The September 13, 2007, agreement provided that the reduction of the cost of storage fees was dependent upon full payment by September 14, 2007. Therefore, September 14, 2007, is arguably the time “agreed upon” by the parties.
 
 See
 
 § 32-13-1(1), Ala.Code 1975. Assuming that “no time [was] agreed upon,”
 
 see
 
 § 32-13-1(1), the date of the September 13, 2007, agreement is the last date on which the calculation of the abandonment period could begin. It is clear that the repairs were complete, or the cessation of work at the direction of Morgungenko occurred, more than a month before Mor-gungenko and Howard entered into the September 13, 2007, agreement.
 
 See
 
 § 32-13-1(1). Accordingly, we must conclude that the record contains evidence to support the trial court’s judgment determining that the vehicle was an abandoned motor vehicle under the Act.
 

 Morgungenko also asserts that the trial court erred in concluding that he lacked standing to object to the reasonableness of Dewayne’s charges for storage. In order to have standing, one must have a “ ‘real, tangible legal interest’ ” in the property at issue and the injury complained of must be to a legally protected right.
 
 Town of Cedar Bluff v. Citizens Caring for Children,
 
 904 So.2d 1253, 1256 (Ala.2004)(quoting
 
 Doremus v. Business Council of Alabama Workers’ Comp. Self-Insurers Fund,
 
 686 So.2d 252, 253 (Ala.1996)). It is clear that, as the owner of the vehicle, Morgungenko had standing to dispute the reasonableness of the storage charges. In fact, Morgungenko did so, and he ultimately entered into the September 13, 2007, agreement with Dewayne’s that provided, among other things, for the reduction of the amount of those storage charges. We have affirmed the trial court’s judgment finding the vehicle to be abandoned based on Morgungen-ko’s failure to comply with the terms of the September 13, 2007, agreement. Thus, because Morgungenko entered into the September 13, 2007, agreement settling his dispute with Dewayne’s about the amount of the storage fees, he waived any further objection to the reasonableness of those fees.
 

 Morgungenko also argues that the Act is unconstitutional because, he says, it constitutes an impermissible taking of private property. However, Morgungenko cites no authority in support of his argument that the trial court erred in denying his constitutional claim that the Act constitutes an impermissible taking of property. Accordingly, Morgungenko has failed to comply with Rule 28, Ala. R.App. P., and, for that reason, we decline to address the argument.
 
 Hendricks v. KW Plastics, Inc.,
 
 5 So.3d 1289, 1291 (Ala.Civ.App.2008).
 

 APPLICATION FOR REHEARING OVERRULED; OPINION OF SEPTEMBER 10, 2010, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . The pleadings, motions, orders, and judgment in this matter identify the defendant/ap-pellee as "Dwayne's Body Shop.” However, a closer examination of the record and exhibits indicate that the correct name of this party is "Dewayne’s Paint & Body, LLC.” Accordingly, we have changed the style of this opinion to reflect the proper party, and, for the purposes of this opinion, we will refer to the appellee as "Dewayne's.”
 

 [2]
 

 . It appears that Missouri, the state in which the vehicle was registered, required the vehicle to be present in Missouri in order for title to be formally transferred: because the vehicle remained on the premises of Dewayne's, that could not be accomplished.
 

 [3]
 

 . Morgungenko argues, in his reply brief and on application for rehearing, that he signed the September 13, 2007, agreement under duress. Morgungenko did not raise that argument before the trial court in response to Dewayne’s contention, asserted before that court, that the vehicle was abandoned, pursuant to § 32-13-1, upon the expiration of 60 days from September 13, 2007. Accordingly, we must conclude that Morgungenko failed to properly preserve this argument as a basis for seeking the reversal of the trial court’s judgment.
 
 Tucker v. Nichols,
 
 431 So.2d 1263, 1264 (Ala.1983) (the ”rule[s] of appellate review prohibit[ ]
 
 reversal
 
 of a judgment below on grounds not raised and presented to the trial court”);
 
 Wilcoxen v. Wilcoxen,
 
 907 So.2d 447, 450 (Ala.Civ.App.2005) (same).